Mitchell S. Chaban (ARDC No. 6226667)
Robert G. Cooper (ARDC No. 6299551)
**LEVIN GINSBURG**
180 North LaSalle Street, Suite 3200
Chicago, Illinois 60601
Telephone: (312) 368-0100

Of Counsel:
David E. De Lorenzi
Tryn Stimart
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
*Attorneys for Plaintiff*
*GemShares, LLC*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| GEMSHARES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| ARTHUR JOSEPH LIPTON and | ) | |
| SECURED WORLDWIDE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff GemShares LLC ("Plaintiff" or "GemShares"), as and for its Complaint against

Defendants Arthur Joseph Lipton ("Lipton") and Secured Worldwide, LLC ("SWW")

(collectively, "Defendants"), herein alleges:

### NATURE OF ACTION

1.      This is an action for patent infringement and declaration of patent ownership,

each under 35 U.S.C. § 1 *et seq.*, breach of contract and breach of fiduciary duty under the laws

of the State of Illinois, for constructive trust under the laws of the State of Illinois, and such other relief as the Court deems just and proper.

## PARTIES

2.    Plaintiff GemShares at all times relevant to this action, was and is an entity organized and existing under Illinois law, with its principal place of business in Chicago, Illinois.

3.    Upon information and belief, Defendant Lipton is a citizen of the State of Connecticut.

4.    Upon information and belief, SWW is a Delaware limited liability company with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

5.    This action is for willful direct and indirect patent infringement pursuant to 35 U.S.C. §§ 271(a)-(c) that Lipton and SWW have made, used, imported, offered for sale and/or sold inventions covered by U.S. Patent Nos. 8,239,211 and 8,706,513, owned by GemShares; and that Lipton violated Illinois law by engaging in business activities and engaging in other conduct prohibited to him, or failing to engage in conduct required of him, under his contractual and fiduciary duties as an owner of GemShares.

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

7.    This Court has personal jurisdiction over Defendants based on Lipton's and SWW's contacts with the State of Illinois and Lipton's consent to the jurisdiction of this Court as set forth in Section 14.03 of the GemShares, L.L.C. Operating Agreement. *Infra.*

8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2), 1400(b) as Defendants engaged in acts giving rise to this action in this District and Lipton's consent to

proper venue in this District as set forth in Section 14.03 of the GemShares, L.L.C. Operating Agreement.

9.      Further, *inter alia,* Defendants have marketed and offered for sale, and are currently marketing and/or offering for sale in this District their infringing VULT product.  *See, e.g.,* www.vult.com.

## BACKGROUND

### Formation of GemShares

10.     GemShares is a privately held small company that is in the business of creating diamond investment products.

11.     GemShares was founded in 2008 by partners Victor Feldman ("Victor"), Andrew Feldman ("Andrew"), Daniel Gramza ("Gramza") and Sharon Karsten ("Karsten").

12.     In 2008, Victor, Andrew, Gramza, Karsten and David So ("So") filed provisional patent applications with the U.S. Patent and Trademark Office to protect their innovation in creating consumer and financial institution useable diamond investment products.

13.     Those provisional applications matured into U.S. Patent Nos. 8,239,211 and 8,706,513 ("the GemShares patents"), each of which has been duly and properly assigned in their entirety to GemShares. True and correct copies of the Gemshares' patents are attached hereto as Exhibit 1.

14.     The GemShares patents, issued on August 7, 2012 and April 22, 2014, respectively, claim, among other things, a fungible basket of investment grade gems for use in conjunction with financial instruments comprising: a plurality of gems having similar gemological characteristics within a range of predetermined criteria and similar optical characteristics within a range of predetermined criteria; said plurality of gems further being

selected from predetermined range of weight classifications, such that each gem within a predetermined weight classification has an equivalent monetary value, the equivalent monetary value being determined by a computer in response to input of the gemological characteristics and optical characteristics, wherein each fungible basket has an equivalent monetary value with other fungible baskets.

15. Beginning in or about 2008, Victor, Andrew, Gramza and Karsten began marketing GemShares' ideas and intellectual property to representatives in the diamond industry, banking industry and financial services industry in an effort to create tradeable financial products such as exchange traded funds and other investment vehicles based upon GemShares' intellectual property.

16. In or about 2012, the then-owners of GemShares began discussions with Lipton concerning the GemShares business.

17. In 2013, Lipton bought into GemShares as one-fifth partner, and on or about February 27, 2013, Lipton, Victor, Andrew, Gramza and Karsten signed an Amended and Restated Operating Agreement for GemShares, L.L.C. ("the Operating Agreement").[1]

18. On or about the time that the Operating Agreement was signed, with the advance consent of the other GemShares members, Lipton assigned his ownership in GemShares to A. Lipton LLC.

19. Conditional to that consent, Lipton represented and agreed in writing to remain responsible and liable, and is to this day responsible and liable, for all obligations, undertakings and promises to which he was theretofore responsible and liable under the terms of GemShares' Articles of Organization and the Operating Agreement.

---

[1] The Operating Agreement is not a publicly available document. Therefore, it is not attached to this Complaint. However, Defendants certainly have a copy of the Operating Agreement (or access to one).

### The Obligations Under The Operating Agreement

20.     The Operating Agreement describes the business of GemShares as any product, service or business enterprise that utilizes, in whole or in part, the GemShares patents, or develops, builds or creates anything that utilizes the GemShares patents, either in a financial or commercial context ("GemShares Business").

21.     Pursuant to the Operating Agreement, no member of GemShares is permitted to acquire or own any interest in, or assist any person who or which, directly or indirectly through any other person, engages in any business, enterprise, trade, profession or employment that is competitive with GemShares or is related to the GemShares Business.

22.     Pursuant to the Operating Agreement, each member of GemShares agrees to disclose and present to GemShares any and all opportunities related to acquiring, developing, creating, owning, marketing, managing, operating, dealing in, issuing, listing and trading any product within or otherwise related to the business of GemShares, or any other activity, product or service which is a logical extension of, or is likely to be competitive with GemShares.

23.     Further pursuant to the Operating Agreement, each member of GemShares agrees to refrain from acquiring, developing or investing, directly or indirectly, in any such product or business competitive with or related to GemShares, and such competitive product and any such competitive person or activity other than through or in the name of or on behalf of GemShares, unless full disclosure of the opportunity was made to GemShares and the members of GemShares agreed to allow the member to pursue that opportunity.  Further to the Operating Agreement, "[t]he Members may determine that such opportunity should not be pursued by Members on their own behalf for reasons that to do so will impair or detract from [GemShares'] efforts to pursue its purpose and business or any other reason (or no reason); the Members shall

5

make such decisions and votes acting in their respective sole discretion for any or no reason as they may decide."

24.     Further pursuant to the Operating Agreement, each GemShares member agrees to hold in trust for the sole right and benefit of GemShares and assign to GemShares or its designee all of the member's right, title and interest in and to any and all any inventions, discoveries, ideas, concepts, original works of authorship, designs, processes, developments, improvements, or trade secret relating to or competitive to the GemShares Business, created or otherwise developed, alone or in conjunction with the other members, including, but not limited to, assignment as an inventor with respect to any patent or application for a patent.

25.     Further pursuant to the Operating Agreement, GemShares is entitled to recover its attorneys' fees, costs and related expenses against any member found to have violated its obligations under the Operating Agreement.

26.     Further pursuant to the Operating Agreement, GemShares is entitled to a preliminary and/or permanent court injunction barring a member from continuing to violate its obligations under the Operating Agreement.

### Lipton's Violations of the Operating Agreement

27.     During Fall 2013, Lipton began silently working on a business to be competitive with GemShares. That business became SWW.

28.     The business of SWW was to develop a commercial diamond product of fungible diamond gemstones, as described in the GemShares patents.

29.     Over the course of 2013, Lipton continued to work on the business and brought in an individual, Cormac Kinney ("Kinney") to assist with his development.

30.    On or about February 2014, Lipton, Kinney and an individual named Jay Plourde filed a patent application entitled "SECURE DIAMOND SMART CARDS AND EXCHANGE SYSTEMS THEREFOR" (the "SWW patent application").

31.    The SWW patent application was assigned to SWW.

32.    The SWW patent application disclosed a secure basket of fungible diamonds having similar gemological characteristics within a range of predetermined criteria and similar optical characteristics within a range of predetermined criteria; said plurality of diamonds further being selected from predetermined range of weight classifications, such that each diamond within a predetermined weight classification has an equivalent monetary value, the equivalent monetary value being determined by a computer in response to input of the gemological characteristics and optical characteristics, wherein each fungible basket has an equivalent monetary value with other fungible baskets.

33.    Lipton and SWW named the product that was subject of the SWW patent application the "VULT product."

34.    Defendants have offered for sale, and are currently offering for sale, their VULT product.  *See* www.vult.com.

35.    To convince Kinney to join SWW, Lipton made several representations to Kinney.

36.    As a result of Lipton's breach of his promises and representations to Kinney, Kinney sued Lipton in the U.S. District Court for the Southern District of New York, Case No. 1:15-CV-01761-CM ("the Kinney case").

37.    After a full trial on the merits, judgment was entered in favor of Kinney on many of his claims.

7

38.    The Court in the Kinney case made the following findings of fact:

a.    Lipton advised Kinney that his VULT product would use "GemShares patented process;"

b.    Lipton held SWW out to Kinney as a licensee of the GemShares patents;

c.    Lipton could not produce the VULT product without obtaining permission from GemShares;

d.    Lipton never obtained consent or a license from GemShares.

39.    Defendants' VULT product infringes the GemShares patents.

40.    Lipton and SWW knew the VULT product infringed the GemShares patents; and they each knew SWW was unlicensed, but SWW and Lipton went forward with making, offering for sale, and selling the product anyway.

41.    Lipton also knew that his SWW/VULT business was competitive with GemShares' business.

42.    At no point did Lipton obtain approval from GemShares to pursue his competitive SWW business.

43.    On or about early 2017, while still a member of GemShares and subject to the Operating Agreement, Lipton began another endeavor to compete with GemShares.

44.    On or about early 2017, Lipton and SWW formed a partnership with one or more entities in Singapore to form a company by the name of Singapore Diamond Mint ("SDM").

45.    Upon information and belief, Lipton and/or SWW is an owner of SDM.

46.    Upon information and belief, the business of SDM is to market Defendants' VULT product and provide another platform for trading the VULT product on an exchange, namely, SDM co-owner, the Singapore Diamond Exchange.

47.     Like SWW (and the VULT product), business of SDM is directly competitive with the GemShares business.

48.     Lipton, through himself and SWW, was responsible for the creation of SDM.

49.     Lipton did not inform GemShares about SDM until approximately September 2017.

50.     Lipton did not present the SDM opportunity to GemShares for its participation or approval, at any time.

51.     Lipton created both SWW and SDM to benefit himself and compete in the GemShares business at the expense of, and to the detriment of, GemShares (and his partners in GemShares).

### COUNT I – PATENT INFRINGEMENT BY LIPTON

52.     GemShares hereby incorporates paragraphs 1 through 51 as if fully set forth herein.

53.     Lipton has either made, used, sold or offered for sale or imported the VULT product in the United States.

54.     Lipton's actions as alleged herein constitute infringement, directly, contributorily and through inducement, of one or more claims of the GemShares patents under 35 U.S.C. §§ 271(a)-(c).

55.     At all relevant times, Lipton knew his actions constituted infringement of the GemShares patents and acted in reckless disregard thereof.

56.     Lipton's infringement of the GemShares patents has been willful, and this is an exceptional case under 35 U.S.C. § 285.

## COUNT II – PATENT INFRINGEMENT BY SWW

57.     GemShares hereby incorporates paragraphs 1 through 56 as if fully set forth herein.

58.     SWW has either made, used, sold or offered for sale or imported the VULT product in the United States.

59.     SWW's actions as alleged herein constitute infringement, directly, contributorily and through inducement, of one or more claims of the GemShares patents under 35 U.S.C. §§ 271(a)-(c).

60.     At all relevant times, SWW knew its actions constituted infringement of the GemShares patents and acted in reckless disregard thereof.

61.     SWW's infringement of the GemShares patents has been willful, and this is an exceptional case under 35 U.S.C. § 285.

## COUNT III – DECLARATION OF PATENT OWNERSHIP

62.     GemShares hereby incorporates paragraphs 1 through 61 as if fully set forth herein.

63.     The SWW patent application constitutes a right in an invention, discovery, idea, concept, original work of authorship, design, process, development, improvement, or trade secret relating to or competitive to the GemShares Business, created or otherwise developed by Lipton, alone or in conjunction with the other members.

64.     Pursuant to the Operating Agreement, GemShares is a beneficial owner of the SWW patent application.

65.     Pursuant to the Operating Agreement, Lipton was obligated to assign his legal title in and to the SWW patent application to GemShares.

66. Lipton breached the Operating Agreement by wrongfully assigning his interest in and to the SWW patent application to SWW.

## COUNT IV – BREACH OF CONTRACT

67. GemShares hereby incorporates paragraphs 1 through 66 as if fully set forth herein.

68. The Operating Agreement is an enforceable contract under Illinois law (and otherwise).

69. Lipton breached the Operating Agreement by, *inter alia*, and without limitation:

    a.    Owning an interest in SWW and SDM, insofar as such businesses and their activities are competitive with GemShares and/or related to the GemShares Business;

    b.    Engaging and otherwise being involved in SWW and SDM business activities that are competitive with GemShares and/or related to the GemShares Business;

    c.    Not disclosing and presenting to GemShares the business opportunities involving VULT, SWW and/or SDM; and

    d.    Assigning his interests in the SWW patent application to SWW.

## COUNT V – BREACH OF FIDUCIARY DUTY

70. GemShares hereby incorporates paragraphs 1 through 69 as if fully set forth herein.

71. Lipton breached his fiduciary duties to GemShares, including without limitation his duties of loyalty and full disclosure, *by inter alia*, without limitation:

    a.    Owning an interest in SWW and SDM, insofar as such businesses and their activities are competitive with GemShares and/or related to the GemShares Business, including without limitation marketing and sales of the VULT product;

    b.    Engaging and otherwise being involved in SWW and SDM business activities that are competitive with GemShares and/or related to the

GemShares Business, including without limitation marketing and sales of the VULT product;

c.   Not disclosing and presenting to GemShares the business opportunities involving VULT, SWW and/or SDM; and

d.   Assigning his interests in the SWW patent application to SWW.

## COUNT VI – CONSTRUCTIVE TRUST

72.   GemShares hereby incorporates paragraphs 1 through 71 as if fully set forth herein.

73.   The property of SDM and SWW constitute lost business opportunities owed to GemShares as a result of Lipton's breach of fiduciary duty and unjust enrichment.

74.   A constructive trust for the benefit of GemShares should be imposed on Lipton's interests and benefits derived therefrom in SWW, SDM and the SWW patent application.

## PRAYER FOR RELIEF

**WHEREFORE,** GemShares prays for the following judgment and relief:

a.   A declaration that Lipton has infringed U.S. Patent No. 8,239,211;

b.   A declaration that Lipton has infringed U.S. Patent No. 8,706,513;

c.   A declaration that SWW has infringed U.S. Patent No. 8,239,211;

d.   A declaration that SWW has infringed U.S. Patent No. 8,706,513;

e.   A declaration that Lipton's infringement was willful;

f.   A declaration that SWW's infringement was willful;

g.   An award of damages under 35 U.S.C. § 284 adequate to compensate GemShares for Lipton's and SWW's patent infringement;

h.   A declaration that this case is exceptional under 35 U.S.C. § 285;

i.   An award of treble damages and attorneys' fees to GemShares under 35 U.S.C. § 285;

j.      A preliminary and/or permanent injunction barring Defendants from continuing their infringing activities;

k.      A declaration that Lipton breached the Operating Agreement;

l.      A declaration that Lipton breached his fiduciary duty to GemShares;

m.      A preliminary and/or permanent injunction barring Defendants from continuing their wrongful actions, as alleged herein, including without limitation a judgment barring Lipton from conducting or being associated in any with any business competitive with GemShares' Business, directly or indirectly, regardless of where any such business may be located or conducted.

n.      An order directing Lipton and SWW to assign all of their respective interests (but not liabilities) in SWW, including the SWW patent application, to GemShares;

o.      Imposition of a constructive trust on the property of SWW and SDM for the benefit of GemShares;

p.      An award of damages to compensate GemShares for Lipton's and SWW's other wrongful actions, as alleged herein;

q.      Award of attorneys' fees, costs and related expenses to GemShares pursuant to the terms of the Operating Agreement; and

r.      Such other relief, in law or equity, as this Court deems just and proper.

<strong>LEVIN GINSBURG</strong>

/s/ Mitchell S. Chaban
Mitchell S. Chaban (ARDC No. 6226667)
Robert G. Cooper (ARDC No. 6299551)
180 North LaSalle Street, Suite 3200
Chicago, Illinois 60601
Telephone: (312) 368-0100

**GIBBONS P.C.**

<u>s/David E. De Lorenzi</u>
David E. De Lorenzi
One Gateway Center
Newark, New Jersey 07102-5310
DDeLorenzi@gibbonslaw.com

Tryn T. Stimart
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
tstimart@gibbonslaw.com

*Attorneys for Plaintiff*
*GemShares LLC*

Dated:        August 28, 2017

14

## JURY DEMAND

Plaintiff hereby demands a jury on all issues so triable.

**LEVIN GINSBURG**

/s/ Mitchell S. Chaban
Mitchell S. Chaban (ARDC No. 6226667)
Robert G. Cooper (ARDC No. 6299551)
180 North LaSalle Street, Suite 3200
Chicago, Illinois 60601
Telephone: (312) 368-0100

**GIBBONS P.C.**

s/David E. De Lorenzi
David E. De Lorenzi
One Gateway Center
Newark, New Jersey 07102-5310
DDeLorenzi@gibbonslaw.com

Tryn T. Stimart
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
tstimart@gibbonslaw.com

*Attorneys for Plaintiff*
*GemShares LLC*

Dated:      August 28, 2017