**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

GEMSHARES LLC,

Plaintiff,

v.

ARTHUR JOSEPH LIPTON and SECURED WORLDWIDE, LLC, a/k/a AMERICAN DIAMOND MINT LLC,

Defendants.

Case No. 1:17-cv-06221

Honorable Matthew F. Kennelly

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff GemShares LLC ("Plaintiff" or "GemShares"), as and for its Complaint against Defendants Arthur Joseph Lipton ("Lipton") and Secured Worldwide, LLC, a/k/a American Diamond Mint LLC ("SWW") (collectively, "Defendants"), herein alleges:

**NATURE OF ACTION**

1. This is an action for patent infringement and declaration of patent ownership, each under 35 U.S.C. § 1 *et seq.*, breach of contract and breach of fiduciary duty under the laws of the State of Illinois, for constructive trust under the laws of the State of Illinois, and such other relief as the Court deems just and proper.

**PARTIES**

2. Plaintiff GemShares at all times relevant to this action, was and is an entity organized and existing under Illinois law, with its principal place of business in Chicago, Illinois.

3. Upon information and belief, Defendant Lipton is a citizen of the State of Connecticut.

4. Upon information and belief, SWW is a Delaware limited liability company with its principal place of business in New York, New York.

**JURISDICTION AND VENUE**

5. This action is for willful direct and indirect patent infringement pursuant to 35 U.S.C. §§ 271(a)-(c) that Lipton and SWW have made, used, imported, offered for sale and/or sold inventions covered by U.S. Patent No. 8,706,513, owned by GemShares; and that Lipton violated Illinois law by engaging in business activities and engaging in other conduct prohibited to him, or failing to engage in conduct required of him, under his contractual and fiduciary duties as an owner of GemShares.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

7. This Court has personal jurisdiction over the Defendants.

8. Specifically, this Court has jurisdiction over SWW and Lipton based on the continuous and systematic contacts and conduct that connects Lipton and SWW with the State of Illinois in a meaningful way including, *inter alia*: Lipton's consent to the jurisdiction of this Court as set forth in Section 14.03 of the GemShares, L.L.C. Operating Agreement, including for disputes relating to allegations that Lipton engaged in activity that infringes U.S. Patent No. 8,706,513 in violation of Lipton's agreement not to engage in an un-licensed business pursuant to Section 3.02(a) of the GemShares, L.L.C. Operating Agreement, Lipton's membership in GemShares, L.L.C., an Illinois LLC, Lipton's development / commercialization of the accused VULT product occurred at least in part in Illinois, SWW's appearance in this action without asserting a lack of personal jurisdiction defense.

9. Further, *inter alia,* Defendants have marketed and offered for sale, and are currently marketing and/or offering for sale in this District their infringing VULT product (a/k/a Diamond Bullion). *See, e.g.*, www.vult.com, www.americandiamondmint.com.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2), 1400(b) as Defendants engaged in acts giving rise to this action in this District, Lipton's consent to proper venue in this District as set forth in Section 14.03 of the GemShares, L.L.C. Operating Agreement, and SWW's consent to venue in this District. *See* Dkt. No. 21, 4 n.1.

**BACKGROUND**

**The Patent**

11. U.S. Patent No. 8,706,513 ("the '513 patent") is entitled "Global Investment Grade For Natural and Synthetic Gems Used in Financial Investments and Commercial Trading and Method of Creating Standardized Baskets of Gems to be Used in Financial and Commercial Products." Attached hereto as Exhibit 1 is a true and correct copy of the '513 patent.

12. The '513 patent issued on April 22, 2014 with Victor Feldman ("Victor"), Sharon Karsten ("Karsten"), Daniel Gramza ("Gramza"), David So ("So"), and Andrew J. Feldman ("Andrew") listed as inventors.

13. The '513 patent claims, among other things, a fungible basket of investment grade gems for use in conjunction with financial instruments comprising: a plurality of gems having similar gemological characteristics within a range of predetermined criteria and similar optical characteristics within a range of predetermined criteria; said plurality of gems further being selected from predetermined range of weight classifications, such that each gem within a predetermined weight classification has an equivalent monetary value, the equivalent monetary value being determined by a computer in response to input of the gemological characteristics and

optical characteristics, wherein each fungible basket has an equivalent monetary value with other fungible baskets.

14. The ‘513 patent has been duly and properly assigned in its entirety to GemShares.

**Formation of GemShares**

15. GemShares is a privately held small company that is in the business of creating diamond investment products.

16. GemShares was founded in 2008 by partners Victor, Andrew, Gramza and Karsten.

17. In 2008, Victor, Andrew, Gramza, Karsten and So filed provisional patent applications with the U.S. Patent and Trademark Office to protect their innovation in creating consumer and financial institution useable diamond investment products.

18. Those provisional application matured into the ‘513 patent and U.S. Patent No. 8,239,211 (“the ‘211 patent”) (collectively “the GemShares patents[1]”).

19. Beginning in or about 2008, Victor, Andrew, Gramza and Karsten began marketing GemShares’ ideas and intellectual property to representatives in the diamond industry, banking industry and financial services industry in an effort to create tradeable financial products such as exchange traded funds and other investment vehicles based upon GemShares’ intellectual property.

20. In or about 2012, the then-owners of GemShares began discussions with Lipton concerning the GemShares business.

---

[1] While at this time, GemShares asserts allegations of infringement as to the ‘513 patent, it references the “GemShares patents” in this First Amended Complaint because both patents are covered by the GemShares L.L.C. Operating Agreement.

21. In 2013, Lipton bought into GemShares as one-fifth partner, and on or about February 27, 2013, Lipton, Victor, Andrew, Gramza and Karsten signed an Amended and Restated Operating Agreement for GemShares, L.L.C. ("the Operating Agreement").[2]

22. On or about the time that the Operating Agreement was signed, with the advance consent of the other GemShares members, Lipton assigned his ownership in GemShares to A. Lipton LLC.

23. Conditional to that consent, Lipton represented and agreed in writing to remain responsible and liable, and is to this day responsible and liable, for all obligations, undertakings and promises to which he was theretofore responsible and liable under the terms of GemShares' Articles of Organization and the Operating Agreement.

**The Obligations Under The Operating Agreement**

24. The Operating Agreement describes the business of GemShares as any product, service or business enterprise that utilizes, in whole or in part, the GemShares patents, or develops, builds or creates anything that utilizes the GemShares patents, either in a financial or commercial context ("GemShares Business").

25. Pursuant to the Operating Agreement, no member of GemShares is permitted to acquire or own any interest in, or assist any person who or which, directly or indirectly through any other person, engages in any business, enterprise, trade, profession or employment that is competitive with GemShares or is related to the GemShares Business.

26. Pursuant to the Operating Agreement, each member of GemShares agrees to disclose and present to GemShares any and all opportunities related to acquiring, developing, creating, owning, marketing, managing, operating, dealing in, issuing, listing and trading any

---

[2] The Operating Agreement is not a publicly available document. Therefore, it is not attached to this First Amended Complaint. However, Defendants certainly have a copy of the Operating Agreement (or access to one).

product within or otherwise related to the business of GemShares, or any other activity, product or service which is a logical extension of, or is likely to be competitive with GemShares.

27. Further pursuant to the Operating Agreement, each member of GemShares agrees to refrain from acquiring, developing or investing, directly or indirectly, in any such product or business competitive with or related to GemShares, and such competitive product and any such competitive person or activity other than through or in the name of or on behalf of GemShares, unless full disclosure of the opportunity was made to GemShares and the members of GemShares agreed to allow the member to pursue that opportunity. Further to the Operating Agreement, "[t]he Members may determine that such opportunity should not be pursued by Members on their own behalf for reasons that to do so will impair or detract from [GemShares'] efforts to pursue its purpose and business or any other reason (or no reason); the Members shall make such decisions and votes acting in their respective sole discretion for any or no reason as they may decide."

28. Further pursuant to the Operating Agreement, each GemShares member agrees to hold in trust for the sole right and benefit of GemShares and assign to GemShares or its designee all of the member's right, title and interest in and to any and all any inventions, discoveries, ideas, concepts, original works of authorship, designs, processes, developments, improvements, or trade secret relating to or competitive to the GemShares Business, created or otherwise developed, alone or in conjunction with the other members, including, but not limited to, assignment as an inventor with respect to any patent or application for a patent.

29. Further pursuant to the Operating Agreement, GemShares is entitled to recover its attorneys' fees, costs and related expenses against any member found to have violated its obligations under the Operating Agreement.

30. Further pursuant to the Operating Agreement, GemShares is entitled to a preliminary and/or permanent court injunction barring a member from continuing to violate its obligations under the Operating Agreement.

**Lipton's Violations of the Operating Agreement**

31. During Fall 2013, Lipton began silently working on a business to be competitive with GemShares. That business became SWW.

32. Upon information and belief, Lipton created SWW for the purpose of commercializing products and/or services that infringe the GemShare patents.

33. Upon information and belief, the business of SWW was and is to develop and sell a commercial diamond product of fungible diamond gemstones and/or enable others to make, use or sell such products, as described in the '513 patent.

34. Upon information, since SWW's formation, Lipton did everything for SWW; all of Lipton's time was devoted to any and all tasks related to and needed by SWW.

35. Upon information and belief, Lipton was and is the managing member and majority shareholder of SWW.

36. Upon information and belief, Lipton controls, influences and makes all decisions and actions by SWW to infringe the '513 patent.

37. SWW is Lipton's alter-ego.

38. SWW was formed in violation of and continues to operate in violation of the GemShares Operating Agreement.

39. Upon information and belief, SWW is an undercapitalized entity.

40. Over the course of 2013, Lipton continued to work on the business and brought in an individual, Cormac Kinney ("Kinney") to assist with his development.

41. On or about February 2014, Lipton, Kinney and an individual named Jay Plourde filed a patent application entitled "SECURE DIAMOND SMART CARDS AND EXCHANGE SYSTEMS THEREFOR" (the "SWW patent application").

42. The SWW patent application was assigned to SWW.

43. The SWW patent application disclosed a secure basket of fungible diamonds having similar gemological characteristics within a range of predetermined criteria and similar optical characteristics within a range of predetermined criteria; said plurality of diamonds further being selected from predetermined range of weight classifications, such that each diamond within a predetermined weight classification has an equivalent monetary value, the equivalent monetary value being determined by a computer in response to input of the gemological characteristics and optical characteristics, wherein each fungible basket has an equivalent monetary value with other fungible baskets.

44. Lipton and SWW named the product that was subject of the SWW patent application the "VULT product."

45. Defendants have offered for sale, and are currently offering for sale, their VULT product. *See* www.vult.com, www.americandiamondmint.com.

46. To convince Kinney to join SWW, Lipton made several representations to Kinney.

47. As a result of Lipton's breach of his promises and representations to Kinney, Kinney sued Lipton in the U.S. District Court for the Southern District of New York, Case No. 1:15-CV-01761-CM ("the Kinney case").

48. After a full trial on the merits, judgment was entered in the Kinney case in favor of Kinney on many of his claims. Attached hereto as Exhibit 2 is a true and correct copy of the Court's opinion in the Kinney case.

49. The Court in the Kinney case made the following findings of fact:

a. Lipton advised Kinney that his VULT product would use "GemShares patented process";

b. Lipton held SWW out to Kinney as a licensee of the GemShares patents;

c. Lipton could not produce the VULT product without obtaining permission from GemShares;

d. Lipton never obtained consent or a license from GemShares.

50. Defendants have and continue to infringe the '513 patent by offering for sale the VULT product in the United States.

51. Lipton and SWW have been and are inducing infringement of the '513 patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the VULT product that embody the inventions claims in the '513 patent. Specifically, Lipton sought to obtain and represented to others that he had obtained a license to use to use the technology embodied in the '513 patent to develop the VULT product.

52. Lipton and SWW have known of the existence of the '513 patent, and their acts of infringement have been willful and in disregard for the '513 patent, without any reasonable basis for believing they had the right to engage in the infringing conduct.

53. Lipton and SWW knew the VULT product infringed the '513 patent; and they each knew SWW was unlicensed, but SWW and Lipton went forward with making, offering for sale, and selling the product anyway.

54. Lipton also knew that his SWW/VULT business was competitive with GemShares' business.

55. At no point did Lipton obtain approval from GemShares to pursue his competitive SWW business.

56. On or about early 2017, while still a member of GemShares and subject to the Operating Agreement, Lipton began another endeavor to compete with GemShares.

57. On or about early 2017, Lipton and SWW formed a partnership with one or more entities in Singapore to form a company by the name of Singapore Diamond Mint ("SDM").

58. Upon information and belief, Lipton and/or SWW is an owner of SDM.

59. Upon information and belief, the business of SDM is to market Defendants' VULT product and provide another platform for trading the VULT product on an exchange, namely, SDM co-owner, the Singapore Diamond Exchange.

60. Like SWW (and the VULT product), business of SDM is directly competitive with the GemShares business.

61. Lipton, through himself and SWW, was responsible for the creation of SDM.

62. Lipton did not inform GemShares about SDM until approximately September 2017.

63. Lipton did not present the SDM opportunity to GemShares for its participation or approval, at any time.

64. Lipton created both SWW and SDM to benefit himself and compete in the GemShares business at the expense of, and to the detriment of, GemShares (and his partners in GemShares).

**COUNT I – PATENT INFRINGEMENT BY LIPTON**

65. GemShares hereby incorporates paragraphs 1 through 59 as if fully set forth herein.

66. Lipton, either individually or through his alter ego SWW, has either made, used, sold or offered for sale or imported the VULT product in the United States.

67. Upon information and belief, Lipton created SWW for the purpose of commercializing products and/or services that infringe the '513 patent.

68. Upon information and belief, Lipton controls, influences and makes all decisions and actions by SWW to infringe the '513 patent.

69. Upon information and belief, Lipton knew of the '513 patent.

70. Upon information and belief, Lipton represented to third parties that the VULT product was licensed under the GemShares patent, when it was not.

71. Upon information and belief, Lipton knew that the VULT product infringed the '513 patent and/or would cause third parties to infringe the '513 patent.

72. Lipton's actions as alleged herein constitute infringement, directly, contributorily and through inducement, of one or more claims of the '513 patent under 35 U.S.C. §§ 271(a)-(c).

73. Lipton has been and is infringing the '513 patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, including within this judicial district a product that comprises a secure basket of fungible diamonds having similar gemological characteristics within a range of predetermined criteria and similar optical characteristics within a range of predetermined criteria; said plurality of diamonds further being selected from predetermined range of weight classifications, such that each diamond within a predetermined weight classification has an equivalent monetary value, the equivalent monetary

value being determined by a computer in response to input of the gemological characteristics and optical characteristics, wherein each fungible basket has an equivalent monetary value with other fungible baskets, including the sale of the VULT product, in violation of 35 U.S.C. § 271(a) .

74. Lipton has been and is inducing infringement of the ‘513 patent by actively and knowingly inducing others, including SWW, to make, use, sell, offer for sale, or import the VULT product that embodies or uses the invention claims in the ‘513 patent, in violation of 35 U.S.C. § 271(b).

75. Lipton has been and is contributing to the infringement of the ‘513 patent by selling or offering to sell the VULT product, knowing them to be especially made or especially adopted for practicing the invention of the ‘513 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

76. Lipton’s infringement has been, and continues to be knowing, intentional, and willful.

77. At all relevant times, Lipton knew his actions constituted infringement of the ‘513 patent and acted in reckless disregard thereof.

78. This case is exceptional and, therefore GemShares is entitled to an award of attorneys’ fees pursuant to 35 U.S.C. § 285.

**COUNT II – PATENT INFRINGEMENT BY SWW**

79. GemShares hereby incorporates paragraphs 1 through 78 as if fully set forth herein.

80. SWW has either made, used, sold or offered for sale or imported the VULT product in the United States.

81. Upon information and belief, SWW knew of the ‘513 patent.

82. Upon information and belief, SWW, through Lipton, represented to third parties that the VULT product was licensed under the GemShares patent, when it was not.

83. Upon information and belief, SWW knew that the VULT product infringed the ‘513 patent and/or would cause third parties to infringe the ‘513 patent.

84. SWW’s actions as alleged herein constitute infringement, directly, contributorily and through inducement, of one or more claims of the ’513 patent under 35 U.S.C. §§ 271(a)-(c).

85. SWW has been and is infringing the ‘513 patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, including within this judicial district a product that comprises a secure basket of fungible diamonds having similar gemological characteristics within a range of predetermined criteria and similar optical characteristics within a range of predetermined criteria; said plurality of diamonds further being selected from predetermined range of weight classifications, such that each diamond within a predetermined weight classification has an equivalent monetary value, the equivalent monetary value being determined by a computer in response to input of the gemological characteristics and optical characteristics, wherein each fungible basket has an equivalent monetary value with other fungible baskets, including the sale of the VULT product, in violation of 35 U.S.C. § 271(a) .

86. SWW has been and is inducing infringement of the ‘513 patent by actively and knowingly inducing others, to make, use, sell, offer for sale, or import the VULT product that embodies or uses the invention claims in the ‘513 patent, in violation of 35 U.S.C. § 271(b).

87. SWW has been and is contributing to the infringement of the ‘513 patent by selling or offering to sell the VULT product, knowing them to be especially made or especially adopted for practicing the invention of the ‘513 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

88. SWW's infringement has been, and continues to be knowing, intentional, and willful.

89. At all relevant times, SWW knew its actions constituted infringement of the '513 patent and acted in reckless disregard thereof.

90. This case is exceptional and, therefore GemShares is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT III – DECLARATION OF PATENT OWNERSHIP**

91. GemShares hereby incorporates paragraphs 1 through 90 as if fully set forth herein.

92. The SWW patent application constitutes a right in an invention, discovery, idea, concept, original work of authorship, design, process, development, improvement, or trade secret relating to or competitive to the GemShares Business, created or otherwise developed by Lipton, alone or in conjunction with the other members.

93. Pursuant to the Operating Agreement, GemShares is a beneficial owner of Lipton's interest in the SWW patent application.

94. Pursuant to the Operating Agreement, Lipton was personally obligated to assign his legal title in and to the SWW patent application to GemShares.

95. Lipton breached the Operating Agreement by wrongfully assigning his interest in and to the SWW patent application to SWW.

96. Upon information and belief, Lipton controls SWW and SWW serves as Lipton's alter ego.

97. GemShares has been harmed by Lipton's failure to assign his interest in the SWW patent application to GemShares.

98. GemShares seeks a declaration directing Lipton and SWW to assign their interest in the SWW application to GemShares.

**COUNT IV – BREACH OF CONTRACT**

99. GemShares hereby incorporates paragraphs 1 through 98 as if fully set forth herein.

100. The Operating Agreement is an enforceable contract under Illinois law (and otherwise).

101. GemShares and its members have performed its/their obligations under the Operating Agreement.

102. Lipton breached the Operating Agreement by, *inter alia*, and without limitation:

a. Owning an interest in SWW and SDM, insofar as such businesses and their activities are competitive with GemShares and/or related to the GemShares Business;

b. Engaging and otherwise being involved in SWW and SDM business activities that are competitive with GemShares and/or related to the GemShares Business;

c. Not disclosing and presenting to GemShares the business opportunities involving VULT, SWW and/or SDM; and

d. Assigning his interests in the SWW patent application to SWW.

103. GemShares has been harmed by Lipton's breach.

**COUNT V – BREACH OF FIDUCIARY DUTY**

104. GemShares hereby incorporates paragraphs 1 through 103 as if fully set forth herein.

105. Lipton owed a fiduciary duty to GemShares.

106. Lipton breached his fiduciary duties to GemShares, including without limitation his duties of loyalty and full disclosure, *by inter alia*, without limitation:

a. Owning an interest in SWW and SDM, insofar as such businesses and their activities are competitive with GemShares and/or related to the GemShares Business, including without limitation marketing and sales of the VULT product;

b. Engaging and otherwise being involved in SWW and SDM business activities that are competitive with GemShares and/or related to the GemShares Business, including without limitation marketing and sales of the VULT product;

c. Not disclosing and presenting to GemShares the business opportunities involving VULT, SWW and/or SDM; and

d. Assigning his interests in the SWW patent application to SWW.

107. Lipton knew that by engaging in the foregoing conduct that he breached his fiduciary duties to GemShares.

108. GemShares has been harmed by Lipton's breach.

109. Lipton breached his fiduciary duties to GemShares willfully and with the intent to defraud.

110. GemShares seeks an award of punitive damages resulting from Lipton's conduct.

**COUNT VI – CONSTRUCTIVE TRUST**

111. GemShares hereby incorporates paragraphs 1 through 110 as if fully set forth herein.

112. The property of SDM and SWW constitute lost business opportunities owed to GemShares as a result of Lipton's breach of fiduciary duty and unjust enrichment.

113. A constructive trust for the benefit of GemShares should be imposed on Lipton's interests and benefits derived therefrom in SWW, SDM and the SWW patent application.

**PRAYER FOR RELIEF**

**WHEREFORE,** GemShares prays for the following judgment and relief:

a. A declaration that Lipton has infringed U.S. Patent No. 8,706,513;

b. A declaration that SWW has infringed U.S. Patent No. 8,706,513;

c. A declaration that Lipton's infringement was willful;

d. A declaration that SWW's infringement was willful;

e. An award of damages under 35 U.S.C. § 284 adequate to compensate GemShares for Lipton's and SWW's patent infringement;

f. A declaration that this case is exceptional under 35 U.S.C. § 285;

g. An award of treble damages and attorneys' fees to GemShares under 35 U.S.C. § 285;

h. A preliminary and/or permanent injunction barring Defendants from continuing their infringing activities;

i. A declaration that Lipton breached the Operating Agreement;

j. A declaration that Lipton breached his fiduciary duty to GemShares;

k. A preliminary and/or permanent injunction barring Defendants from continuing their wrongful actions, as alleged herein, including without limitation a judgment barring Lipton from conducting or being associated in any with any business competitive with GemShares' Business, directly or indirectly, regardless of where any such business may be located or conducted.

l. An order directing Lipton and SWW to assign all of their respective interests (but not liabilities) in SWW, including the SWW patent application, to GemShares;

m. Imposition of a constructive trust on the property of SWW and SDM for the benefit of GemShares;

n. An award of damages to compensate GemShares for Lipton's and SWW's other wrongful actions, as alleged herein;

o. An award of punitive damages for Lipton's breach of fiduciary duties to GemShares;

p. An award of attorneys' fees, costs and related expenses to GemShares pursuant to the terms of the Operating Agreement; and

q. Such other relief, in law or equity, as this Court deems just and proper.

**LEVIN GINSBURG**
s/Mitchell S. Chaban
Mitchell S. Chaban (ARDC No. 6226667)
180 North LaSalle Street, Suite 3200
Chicago, Illinois 60601
Telephone: (312) 368-0100

**GIBBONS P.C.**

s/David E. De Lorenzi
David E. De Lorenzi
Christopher H. Strate
Christine A. Gaddis
One Gateway Center
Newark, New Jersey 07102-5310
DDeLorenzi@gibbonslaw.com

*Attorneys for Plaintiff*
*GemShares LLC*

Dated: October 25, 2017

**JURY DEMAND**

Plaintiff hereby demands a jury on all issues so triable.

**LEVIN GINSBURG**

s/Mitchell S. Chaban
Mitchell S. Chaban (ARDC No. 6226667)
180 North LaSalle Street, Suite 3200
Chicago, Illinois 60601
Telephone: (312) 368-0100

**GIBBONS P.C.**

s/David E. De Lorenzi
David E. De Lorenzi
Christopher H. Strate
Christine A. Gaddis
One Gateway Center
Newark, New Jersey 07102-5310
DDeLorenzi@gibbonslaw.com

Tryn T. Stimart
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
tstimart@gibbonslaw.com

*Attorneys for Plaintiff*
*GemShares LLC*

Dated: October 25, 2017

**CERTIFICATE OF SERVICE**

I, Mitchell S. Chaban, hereby certify that the foregoing First Amended Complaint and Jury Demand was electronically filed with the U.S. District Court for the Northern District of Illinois, by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/Mitchell S. Chaban