# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GEMSHARES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-06211 |
| | ) | |
| ARTHUR JOSEPH LIPTON and | ) | |
| SECURED WORLDWIDE, LLC, | ) | Hon. Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| ARTHUR JOSEPH LIPTON and | ) | |
| SECURED WORLDWIDE, LLC, | ) | |
| Counterclaim Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEMSHARES LLC | ) | |
| Counterclaim Defendant | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,
PURSUANT TO RULE 12(B)(6), COUNT I, COUNT II AND COUNT III
<u>OF THE FIRST AMENDED COMPLAINT</u>**

**Table of Contents**

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS .................................................................. 3

III.  ARGUMENT ....................................................................................... 5

   A.   The Legal Standards for Motions to Dismiss and Proving Patent Infringement ........ 5

   B.   The '513 Patent Claims 7-11 Cannot Be Asserted Against the Instant Defendants .... 6

   C.   The '513 Patent Claims 1-6 and 12-20 are Directed to Patent-Ineligible Subject Matter and Should be Declared Invalid ................................................................. 7

      1.   Patent Eligibility Under 35 U.S.C. §101 ................................................. 7

      2.   The '513 Patent Claims 1-6 and 12-20 Contain only Patent-Ineligible Ideas .......... 7

   D.   The Prosecution History of a Pending (Continuation) GemShares Patent Application Shows that GemShares Recognizes that the '513 Claims 1-6 and 12-20 are Directed to a Patent-Ineligible Idea .................................................................. 11

   E.   Lipton Is Not Personally Liable for Alleged Patent Infringement Acts of SWW ...... 12

      1.   Lipton did not Personally Make, Use or Sell the Accused VULT products ........... 12

      2.   Lipton did not Induce SWW to Infringe the '513 Patent and SWW is not Lipton's Alter Ego ................................................................................ 13

   F.   Count III Should Be Dismissed Because its Resolution Requires the Presence of Necessary Parties Not Before the Court ................................................. 14

IV.   CONCLUSION .................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2012)…………………………………1-2, 7, 9-12

*Ashcroft v. al-Kidd,* 131 S.Ct. 2074 (2011); 573 U.S. 731 (2011)………………………...5

*Ashcroft v. Iqbal, 556 U.S. 662 (2009)*…………………………………………………......5, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………………………5

*Brooks v. Ross*, 578 F.2d 574 (7th Cir. 2009)………………………………………………...5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014)……………………………………………………...7

*Deuterium Corp. v. United States*, 16 Cl. Ct. 454 (1989)………………………………...6

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016)………………………7

*Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352 (Fed. Cir. 2004)………………………14-15

*Hoover Grp., Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408 (Fed. Cir. 1996)………………..14

*London v. Carson Pirie Scott & Co.*, 946 F.2d 1534 (Fed. Cir. 1991)………………………....6

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), aff'd,
    116 S.Ct 1384 (1996)…………………………………………………………………6

*Secured Mail Solutions LLC v. Universal Wilde Inc.,*
    2017 U.S. App. LEXIS 20105, Fed. Cir. No. 2016-1728 (October 16, 2017)………...10

*Smart Systems Innovations, LLC v. Chicago Transit Authority*, No. 2016-1233, 2017 WL 372798,
2017 U.S. App. LEXIS 20333 (Fed Cir. 2017)(also included herewith as **Ex. 6**)….7, 9

*Smart Systems Innovations, LLC v. Chicago Transit Authority,*
    No. 1:14-cv-08053, 2015 U.S. Dist. LEXIS 89628 (N.D. Ill.)……………………..7, n.3

*STC.UNM v. Intel Corp.* 754 F.3d 940 (Fed. Cir. 2014,) aff'd en banc,
    *STC.UNM v. Intel Corp.*, 767 F.3d 1351 (Fed. Cir. 2014)……………………………15

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002)…………………………………………5

*Wahpeton Canvas Co. v. Frontier Inc.* 870 F.2d 1546 (Fed. Cir. 1989)………………………6

**Statutes**

35 U.S.C. § 101……………………………………………………………………7-11

35 U.S.C. § 256(b)…………………………………………………………………..14

35 U.S.C. § 271………………………………………………………….......13

## I.  **INTRODUCTION**

Defendants Arthur Joseph Lipton ("**Lipton**") and Secured Worldwide, LLC ("**SWW**")

respectfully move to dismiss, Pursuant to Rule 12(b)(6), the GemShares LLC ("**GemShares**")

First Amended Complaint (the "Amended Complaint") Counts  I and II (patent infringement)

and Count III (ownership of the SWW patent application). The sole patent remaining in Counts I

and II is GemShares' U.S. Patent No. 8,706,513 ("the '513 patent") (**Ex. 1**)[1].

GemShares withdrew the (spurious) infringement allegations of its U.S patent No.

8,239,211 ("the '211 patent") (**Ex. 2**), which from the start could not possibly have been made in

good faith, because the '211 patent claims require the existence of a public exchange for trading

diamond-based securities. GemShares knew from the start that no such exchange exists in the

United States. Those patent claims also require a computer solving unique equations[2], whose

inputs are exchange variables, e.g. interest rates, fund expenses, making the infringement charge

impossible, *ab initio*. GemShares' concession, if not a legal admission, that any patent claim

invoking those equations is not being infringed by SWW, necessarily eliminates patent claims 7

through 11 of the remaining '513 patent, which recite the same market-based equations (recited

in the withdrawn '211 patent) (See **Ex. 1**, at Col. 13).

The remaining '513 patent claims 1-6 and 12-20 are invalid because they are directed to

an abstract business idea, namely creating exchanges for public trading of diamond-based

financial instruments (stocks, ETF funds, futures, etc.). Courts routinely invalidate, at the

pleading stage, patent claims directed to business-oriented and purely abstract ideas as being

patent-ineligible pursuant to *Alice Corp. v. CLS Bank Int'l,* 134 S. Ct. 2347 (2012). Moreover,

---

[1] The numerically numbered exhibits are attached to the Second Moskowitz declaration and the alphabetically marked exhibits are attached to the Second Lipton Declaration.

[2] **Index**=$NAV=X_0(Y_0) + Y_1(Y_1) + FI\text{-}FE$  and  **Intraday pricing**=$NAV=X_0(Y_0) + X_1(Y_1) + FI\text{-}FE$.

the patent-ineligible claims 1-6 and 12-20 also require creating diamond bundles of equal monetary value "for use in conjunction with financial instruments." (**Ex. 1**, Cols. 18-20). No such financial instruments exist and no infringement could possibly be found because SWW sells only **physical** diamond packages, referred to below as the VULTs, which have never been used "in conjunction with financial instruments". Therefore the patent infringement counts herein are bogus and should be dismissed.

This case should be focused on its core dispute, namely on GemShares' (incorrect) allegation that Lipton, a GemShares member, has breached the GemShares Operating Agreement, by establishing SWW to make and sell the VULT diamond packages, which (allegedly) compete with GemShares' business and divert to Lipton the benefits and profits of a business concept and product that was conceived by GemShares. That product, now the VULT depicted below, embodies a novel diamond packaging concept, in the form of an impenetrable, portable vault for diamonds. No two VULT diamond packages are identical. Their internal electronics, physical attributes and associated software allow the user to uniquely authenticate each VULT package. This enables consumers to sell the VULTs to each other, with buyers being able to "authenticate" the offered VULT in a matter of minutes by using their mobile phones loaded with the VULT authenticating software, promoting marketplace acceptance of the VULT. The VULT is described in the disputed SWW patent application (the "SWW Patent Application"), whose inventors are Cormac Kinney, Jay Plourde and Lipton.



SWW and Lipton contend that the (intended) business of GemShares, as its name indicates, was to create new "financial instruments," i.e. intangible "Shares," that are diamond-based, i.e. "Gems," to be traded at "exchanges," as an index ETF fund, like existing index funds trading barrels of oil, bushels of wheat or bars of gold. In contrast, the VULT is a tangible, physical product that was not invented at GemShares and was not diverted away from GemShares by Lipton. Additionally, the patent infringement Count I against Lipton should be dismissed because SWW has failed to allege facts indicating that SWW is Lipton's alter ego. Lipton is a minority shareholder of SWW and never personally sold any VULTs and did not "induce" SWW to infringe the (invalid and non-infringed) '513 patent.

Count III should be dismissed because it seeks a "Declaration of Patent Ownership," declaring GemShares the "owner" of the SWW Patent Application, which (indivisibly) also includes the inventive contributions of unrelated inventors: Cormac Kinney and Jay Plourde. GemShares should not own the inventive contributions of Kinney (who co-owns the disputed SWW patent application) and Plourde, who are necessary, but absent, parties to the adjudication of the "ownership" of the SWW Patent Application. The ownership rights of many non-party investors and members of SWW could also be adversely impacted by Count III.

## II. STATEMENT OF FACTS

GemShares is presently a non-operating, failed enterprise that was founded in 2008 to create, diamond-based, purely financial instruments to be publicly traded similarly to ETF funds that enable trading derivatives or other market instruments, e.g., options and futures contracts, relating to oil, wheat, soybeans and bars of gold. (Lipton Declaration, filed concurrently, ¶¶ 3-5). GemShares has no employees or regular place of business. Its listed address is the residence of one of its members. (Id. at ¶¶ 6-9). GemShares' investment of about $2,000,000, including

3

Lipton's $250,000 investment, attempting to create diamond-based financial instruments has thus far produced nothing. (*Id.* at ¶¶ 2, 6).

GemShares '513 patent describes creating monetarily <u>fungible</u>, notional "baskets" of diamonds that underpin a mercantile financial exchange for diamond-based financial instruments. GemShares' web portal <u>www.gemshares.com</u> describes its business as: *a financial index… in the field of investment grade gemstones;… We also provide financial services in trading of funds based on precious or semiprecious stones, trading of securities, options, derivatives and commodities based on precious or semiprecious stones as well as creation of funds and securities.* (*Id.* at ¶¶ 3, 4). GemShares contends without evidence or basis that SWW's VULT infringes on its '513 patent.

Lipton formed SWW in 2013 with co-inventors Cormac Kinney and Jay Plourde and an investment of over $10,000,000. The accused VULT product holds diamonds in an impenetrable package, that is sold directly to consumers with authenticating software that enables the wealth storing VULTs to be easily resold by consumers to each other, providing, in addition, high liquidity. (*Id.* at ¶¶ 10-13, 16). A New York court awarded Kinney an undivided 100% interest in the SWW Patent Application. (*Id.* at ¶¶ 14, 15). Neither Lipton nor SWW ever used or implemented any of the equations or diamond selection methods described in the GemShares patents, and never calculated the financial "Index" or the "Intraday pricing" values, that appear in the '513 patent claims 7-11 (and in all of the claims of the withdrawn '211 patent). (*Id.* at ¶¶ 17-18). These patent claims require using active market parameters, such as interest rates, fund expenses and other exchange parameters (as defined in the '513 patent (at col.13, of **Ex. 1**)), to solve the equations (*Id.* at ¶ 18): Index=NAV=$X_0(Y_0)+Y_1(Y_1)+FI-FE$ and Intraday pricing=NAV=$X_0(Y_0)+X_1(Y_1)+FI-FE$. SWW never created, used or sold a fungible basket of

4

gems for use in conjunction with financial instruments as described in independent claims 1, 7, 12 and/or 18 of the '513 patent (*Id.* at ¶ 19). Moreover, Lipton kept GemShares regularly informed about the activities and products of SWW (*Id.* at ¶¶ 20-46).

SWW and its former member Mr. Kinney litigated the ownership of the VULT concepts and patent rights (*Id.* at ¶ 15). GemShares' Victor Feldman provided deposition testimony in the Kinney case, but GemShares' counsel responded to Cormac Kinney's request for assistance, stating that GemShares assumed a "*a hands-off position*" relative to the Kinney case. Subsequently, GemShares was itself entangled in a lawsuit with Mr. Kinney. (*Id.* at ¶¶ 43-48).

## III. <u>ARGUMENT</u>

### A. The Legal Standards for Motions to Dismiss and Proving Patent Infringement

In a motion to dismiss, the Court accepts the complaint's factual allegations and draws reasonable inferences in Plaintiff's favor. *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2079; 573 U.S. 731 (2011). Under Federal Rules of Civil Procedure 8(a)(2), the complaint need only include a short and plain statement that must, however, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). Although the Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to "focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court," *Brooks v. Ross*, 578 F.2d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)), "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that <u>is plausible on its face</u>." (Emphasis added) *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Id.* at 678-79.

5

A patent is not infringed unless all of the elements or steps of the claimed device or process are used either literally or equivalently in the accused device or method. *Deuterium Corp. v. United States*, 16 Cl. Ct. 454 (1989). Each and every element of a claim is material and essential and patent infringement cannot be established if a claim limitation or its equivalent is totally missing from the accused device or process. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534 (Fed. Cir. 1991). An infringement analysis involves determining first the meaning of the patent claims and then comparing the construed claims to the accused device. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 116 S.Ct 1384 (1996). If the "independent" claims are not infringed, then neither is any one of the remaining "dependent" claims. *Wahpeton Canvas Co. v. Frontier Inc.* 870 F.2d 1546, 1553 n.9 (Fed. Cir. 1989).

GemShares was forced to withdraw the '211 patent from this lawsuit because SWW showed that the independent claims 1 and 5 require solving the equations: (a) Index = NAV = X0(Y0) + Y1(Y1) + FI-FE and (b) Intraday pricing=NAV=X0(Y0) + X1(Y1) + FI-FE, which require an active "exchange" for diamond-based securities to use those mathematical equations. No such exchange exists in the United States. The withdrawal of the '211 patent mandates that GemShares must withdraw from this lawsuit certain of '513 patent claims, as explained below.

**B. The '513 Patent Claims 7-11 Cannot Be Asserted Against the Instant Defendants**

Independent claim 7 of the '513 patent is directed to "a system for trading a collection of diamonds as part of a financial instrument," recites "an exchange through which said financial instrument may be purchased and sold," and further requires calculating the intraday pricing of the financial instrument using the equation: *Intraday pricing=NAV=X0(Y0) + X1(Y1) + FI-FE*. GemShares' concession that the '211 patent claims are not infringed mandates concluding that

6

claim 7 of the '513 patent is also not infringed which, in turn, also removes from this law suit the claims 8-11, which depend from claim 7.

### C. The '513 Patent Claims 1-6 and 12-20 are Directed to Patent-Ineligible Subject Matter and Should be Declared Invalid

#### 1. Patent Eligibility Under 35 U.S.C. §101

On October 18, 2017, the Federal Circuit affirmed this District's Judge Chang's decision[3], rendered on a motion to dismiss, that the patent claims of four different patents being asserted against the *Chicago Transit Authority* are directed to patent-ineligible abstract ideas and therefore invalid. In *Smart Systems Innovations, LLC v. Chicago Transit Authority*, No. 2016-1233, 2017 WL 372798 (Fed Cir. 2017) (**Ex. 6**), the Federal Circuit wrote:

> "The Supreme Court, however, has long interpreted §101 and its statutory predecessors to contain an implicit exception: laws of nature, natural phenomena, and abstract ideas are not patentable." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 [113 USPS2d 1354] (Fed. Cir. 2014) … The Supreme Court's decision in *Alice Corp. Pty Ltd. v. CLS Bank International* provides the framework through which we assess patent eligibility under §101. *See* 134 S. Ct. 2347, 2354-55, 189 L. Ed. 2d 296 [110 USPQ2d 1976] (2014). A patent "claim falls outside §101 where (1) it is "directed to" a patent-ineligible concept, *i.e.* the law of nature, natural phenomenon, or abstract idea, and (2) [] if so, the particular elements of the claim, considered "both individually and 'as an ordered combination,'" do not add enough to "transform the nature of the claim' into a patent-eligible application." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 [119 USPQ2d 1739] (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2355). It is against this framework that we analyze the Asserted Claims."

As shown below, claims 1-6 and 12-20 of the '513 patent are directed to the purely abstract idea of <u>creating a marketplace</u> for trading diamond-based, financial instruments, and add <u>nothing</u> that transforms the nature of the claims into patent-eligible applications.

#### 2. The '513 Patent Claims 1-6 and 12-20 Contain only Patent-Ineligible Ideas

---

[3] In *Smart Systems Innovations, LLC v. Chicago Transit Authority*, No. 1:14-cv-08053, **2015 U.S. Dist. LEXIS 89628.**

The '513 patent claims 1-6 and 12-20 include three "independent" claims, namely claims 1, 12 and 18, the texts of which are set forth below, side by side:

| | | |
|---|---|---|
| 1.    A fungible basket of investment grade gems for use in conjunction with financial instruments comprising: | 12.    A fungible collection of investment grade gems for use in conjunction with financial instruments comprising: | 18.    A collection of investment grade gems for use in conjunction with a financial instrument comprising: |
| a plurality of gems having similar gemological characteristics within a range of predetermined criteria and similar optical characteristics within a range of predetermined criteria; | a plurality of gems having similar gemological characteristics within a range of predetermined criteria and similar optical characteristics within a range of predetermined criteria; | a plurality of gems having gemological characteristics within a range of predetermined criteria and optical characteristics within a range of predetermined criteria; |
| said plurality of gems further being selected from predetermined range of weight classifications, such that each gem within a predetermined weight classification has an equivalent monetary value, the equivalent monetary value being determined by a computer in response to input of the gemological characteristics and optical characteristics, wherein each fungible basket has an equivalent monetary value with other fungible baskets. | said plurality of gems further being selected from predetermined range of weight classifications, the collection of said plurality of gems within a particular weight classification having an equivalent monetary value with similar collection of the plurality of gems from a particular weight classification used to create other fungible collections of investment grade gems, wherein the equivalent monetary value is determined by a computer in response to input of the gemological characteristics and optical characteristics. | said plurality of gems further being selected from predetermined range of weight classifications, wherein the collection of said plurality of gems has a monetary value associated therewith and is held in trust in exchange for the financial instrument, wherein the equivalent monetary value is determined by a computer in response to input of the gemological characteristics and optical characteristics. |

Claims 1 and 12 appear indistinguishable, nearly identical in content and scope. Claim 18 adds that "the collection of gems" is held "in trust in exchange for the financial instrument." The dependent claims add little more than recite classical selection criteria for gemstones. Thus, one claim recites that the gemstones are diamonds (claim 2); another that the selection is based on color, clarity, shape, etc. (claim 3); another recites the use of the well-known Gemex Light Performance analysis (claim 4); and two dependent claims recite that the diamonds are within a certain carat weight ranges (claims 5 and 6). Claims 13-17 are identical to claims 2-6. Claim 19 is identical to claim 3,  and claim 20 merely recites that the financial instrument is an exchange traded fund. Not one of the '513 patent claims 1-6 and 12-20 recites anything beyond the abstract

8

idea of creating bundles/baskets/collections of diamonds of equal monetary value, so they can be used to underpin a financial instrument "exchange," and using classical, widely known criteria for determining the aggregate monetary values of the diamond bundles.

In *Smart Systems*, the Federal Circuit quotes from one of its earlier cases: "We… look to whether the claims…focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery,"(2017 U.S. App. LEXIS 20333, *9-10) and then approvingly quotes Judge Chang's holding: "[s]tripped of the technical jargon that broadly describes non-inventive elements (e.g., the 'interfaces' and 'processing systems'), and further shorn of the typically obtuse syntax of patents, the patents here really only cover an abstract concept: paying for a subway or bus ride with a credit card." *Id.* at *10. Judge Chang's above observation is even more strikingly true of the instant '513 patent claims 1-6 and 12-20, which mention a "computer" but adds nothing novel about how it is used. The claims state that the diamonds selected to arrive at a desired, total monetary value should be within a midrange weight, from .5 to 2.3 carats (claims 5, 6, 15 and 17) (the most popular weights, which have more standardized prices). Some claims recite determining "optical characteristics" of the diamonds using the Gemex analysis, which GemShares did not invent (claims 4 and 15). Nothing remotely technical in nature is recited in any of the '513 patent claims 1-6 and 12-20.

These claims do not meet the second step of the §101 analysis that requires courts to determine whether the claims elements, when viewed individually or as an ordered combination, contain "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357. A claim contains an inventive concept if it "include[s] additional features" that are more than "well-understood, routine, conventional

9

activities." *Id.* at 2357, 2359. In the instant claims, there are no "additional features" or anything tangible or of a technical nature directed to the manner in which the diamonds are selected. For centuries, jewelry earrings designers have been creating matching diamond sets, for the left ear and right ear earrings. Indeed, modern manufacturing techniques produce hundreds of copies of identical, multi-diamond jewelry rings, pendants, etc., each of which constitutes a "basket" of fungible diamonds of equal monetary value. Therefore, the only "novel" concept disclosed in the '513 patent is to use the prior art diamond "baskets" to underpin a financial exchange trading diamond-based financial instruments, which is an abstract idea that cannot be patented.

Patent invalidation under 35 USC §101 is quite common. See *Secured Mail Solutions LLC v. Universal Wilde Inc.* 2017 U.S. App. LEXIS 20105, Fed. Cir. No. 2016-1728 (October 16, 2017), in which the Federal Circuit found the patent claims to be directed to patent-ineligible idea of encoding data onto a piece of mail, without describing how to actually do it. See *Id.* at *10-11. The USPTO has been systematically invalidating pre-*Alice* patents, heeding the Supreme Court's mandate to invalidate patents that are directed to patent-ineligible abstract ideas. See for example Ex. 7, which reports to Judge Kendall of this District (in C.A. 10-C-715) the invalidation of seven (7) patents for being directed to patent ineligible subject matter. The instant '513 patent claims 1-6 and 12-20 are paradigm examples of (invalid) claims directed to a patent-ineligible abstract idea (creating diamond-based securities) and nothing more.

Moreover, these claims recite creating fungible diamond baskets[4] of equal monetary value "for use in conjunction with financial instruments." SWW's VULT products are not being

---

[4] The term "basket" in the '513 patent claims does not refer to any physical container but rather to a "grouping" of diamonds that results in "baskets" having close to equal monetary values. A search of the of the '513 patent for "basket" confirms that no physical basket or container is described or even alluded to anywhere in the '513 patent.

used and were never used "in conjunction with financial instruments," and cannot be said to infringe on the '513 patent claims 1-6 and 12-20, which further justifies the dismissal of the patent-based Counts I and II of the First Amended Complaint.

**D. The Prosecution History of a Pending (Continuation) GemShares Patent Application Shows that GemShares Recognizes that the '513 Claims 1-6 and 12-20 are Directed to a Patent-Ineligible Idea**

GemShares is currently prosecuting patent application No. 14/226,540 (the '540 Application) which is a "continuation" patent application of the '513 patent. The (publicly available) record of the '540 Application reveals that GemShares has been attempting to secure further patent claims on the business concept disclosed in the '513 patent. But now, in the post *Alice* era, the PTO is rejecting GemShares' attempts to secure patent claims of a scope very similar to that of the instant '513 patent claims 1-6 and 12-20, holding them to be directed to patent ineligible ideas that cannot be patented pursuant to 35 USC §101. Significantly, GemShares has amended and narrowed the scope of its pending claims attempting to avoid the PTO examiner rejections. More specifically, Exhibit 3 contains a selection of documents from the '540 Application (annotated with added page numbers). These documents show that GemShares recognizes, literally admits, that the '513 patent claims herein are patent-ineligible. In response to a PTO rejection of its patent claims (Ex. 3, pp. 8-14), GemShares filed a response on September 12, 2017 (Ex. 3, pp. 15-24), narrowing the original claims filed on June 25, 2014 (Ex. 3, pp. 2-7, which claims are virtually identical to the '513 patent claims 1-6 and 12-20), effectively conceding to the Examiner's position that these claims are patent-ineligible under ¶101. GemShares also abandoned its efforts to secure a corresponding European patent application, in which its claims were rejected on the ground that they are directed to nothing more than "financial activity", that is, merely a non-patentable method of conducting business

11

(Ex. 4). This further shows that the '513 patent claims 1-6 and 12-20, which are pre-Alice patent claims, are directed to patent-ineligible subject matter, militating dismissal of Counts I and II.

### E. Lipton Is Not Personally Liable for Alleged Patent Infringement Acts of SWW

#### 1. Lipton did not Personally Make, Use or Sell the Accused VULT products

The amended Count I targets Lipton individually, by alleging: "Lipton, either individually or through his alter ego SWW, has … made used, sold or offered for sale or imported the VULT product in the United States." (Dkt. 35 at ¶ 66) It further alleges: "…Lipton controls, influences, and makes all decisions and actions by SWW to infringe the '513 patents." (Id. at ¶ 68), which boils down to the allegation that Lipton subjectively knew that making the VULT infringes on the '513 patent. The Amended Complaint alleges: "Defendants have offered for sale….their VULT product. See www.vult.com, www.amercandiamondmint.com." (Id. ¶ 45) and further alleges: "The Court in the Kinney case made the following finding of facts: a. Lipton advised Kinney that his VULT product would use 'GemShares patented process" (Id. at ¶ 49)

But as noted above, allegations that are entitled to an assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79. GemShares cannot be permitted to concoct facts. Lipton declares (and GemShares knows) that Lipton has never personally made or sold the VULT product. (See Lipton Declaration, ¶¶ 17-19). The website advertising and selling portals mentioned in the Amend Complaint were created by, exclusively for and are owned by SWW, not Lipton. To survive dismissal, GemShares needed to provide some credible evidence that Lipton induced SWW to create and sell the VULT, subjectively knowing that it infringes on the '513, or that SWW is the alter ego of Lipton, which GemShares does not and cannot show.

12

    **2. Lipton did not Induce SWW to Infringe the '513 Patent and SWW is not Lipton's Alter Ego**

Lipton is not a patent professional, not an inventor on the '513 patent and does not know the meaning of a "patent claim" or how to determine whether a product infringes on a particular patent claim. Lipton Declaration at ¶ 17. GemShares contends that Lipton knew that the VULT infringes the '513 patent because the Court in the Kinney case held that Lipton stated to Kinney that the "VULT product would use the "GemShares patented process." (Emphasis added) But that is legally insufficient to establish "inducement" of patent infringement under 35 USC §271. In fact, the '513 patent was not introduced or even mentioned in that lawsuit. Rather, Judge McMahon concluded (despite Lipton's strong denials) that Mr. Kinney believed that a GemShares license is needed to make the VULT, and Lipton misled Kinney to believe that SWW had that license. Judge McMahon arrived at that conclusion based on a Lipton document authored before the '513 issued on April 22, 2014. Therefore, GemShares' wholly unsupported allegation that Lipton knew in early 2014 (or knows now) that the VULT infringes on the '513 patent is based on its misunderstanding Judge McMahon's decisions in the Kinney case.

Secondly, SWW is not Lipton's alter ego. From the start, SWW had multiple members. Presently, SWW has 24 members and Lipton is a minority shareholder. SWW maintains regular business books and records. There is no commingling of funds or anything to justify asserting that SWW is Lipton's alter ego. GemShares' Complaint is devoid of any factual support, let alone "plausible" ones, for this conclusory assertion.

Delaware's Limited Liability Company law shields LLC members, here Lipton, from personal liability relative to Count I of the Complaint. Lipton's alleged acts and conduct were strictly and entirely on behalf of SWW. Therefore, under Delaware law, the "corporate veil"

shields corporate officers from liability for tortious conduct, such as patent infringement

occurring in the regular course of their employment. Personal liability is imposed for direct

infringement only where the corporate structure was a sham or existed merely to shield the

corporate officer from liability for fraud or wrongdoing. *Hoover Grp., Inc. v. Custom Metalcraft,*

*Inc.,* 84 F.3d 1408, 1412 (Fed. Cir. 1996). The exception to this rule is where the corporate entity

is the officer's "alter-ego" or where the officer knowingly aids, abets and induces infringement.

But liability for inducement requires subjective knowledge that the act is an act of patent

infringement and this would be impossible for GemShares to establish in this case given the

factual background provided above. Indeed, GemShares' initial allegations of infringement of

the '211 patent, now withdrawn, shows that GemShares has been derelict in its obligation to

investigate the facts that (purportedly) support its Complaint allegations. Lipton did not induce

SWW to create and market the VULT with knowledge that doing so would infringe on

GemShares' patents. Lipton Declaration at ¶¶18-20. Therefore, the Count I patent infringement

asserted personally against Lipton should be dismissed.

**F. Count III Should Be Dismissed Because its Resolution Requires the Presence of Necessary Parties Not Before the Court.**

Regarding the "inventorship" on the SWW patent application,[5] pursuant to 35 U.S.C.

§256(b) "The error of omitting inventors or naming persons who are not inventors shall not

invalidate the patent in which such error occurred if it can be corrected as provided in this

section. The court before which such matter is called in question may order correction of the

patent on notice and hearing of all parties concerned and the Director shall issue a certificate

accordingly." Thus, Federal Courts have jurisdiction only over issued patents, not pending

---

[5] GemShares' Feldman testified in the New York Kinney litigation that the concepts and inventions described in the SWW patent application were actually conceived by others at GemShares.

patent applications as to determining the "inventorship" thereof. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 n.1 (Fed. Cir. 2004). Because the Count III assertions herein call upon the Court to decide the ownership of the pending SWW Patent Application, and given further that this Application contains the contributions of inventors (and an owner, Kinney) not before the Court, who had no fiduciary obligations to GemShares, the Court should decline GemShares request to inject itself into a dispute over which this Court may lack jurisdiction, at least while the SWW patent application is still pending. This is even more compelling given that a necessary co-owner on the patent application, Cormac Kinney, is not before the Court. See *STC.UNM v. Intel Corp.* 754 F.3d 940 (Fed. Cir. 2014), affirmed en banc *STC.UNM v. Intel Corp.*, 767 F.3d 1351 (Fed. Cir. 2014). Additionally, in Count VI, GemShares requests a constructive trust, to channel to GemShares the benefits that Lipton might gain from his creation of SWW and from the subject SWW Patent Application. Hence, the Court has this Count VI to fashion, if warranted, any appropriate relief, rendering the Count III request duplicative. For the foregoing reasons, Count III should be dismissed.

## IV. <u>CONCLUSION</u>

For the reasons presented above, Defendants respectfully submit that Counts I, II and III in GemShares' First Amended Complaint should be dismissed.

Dated: November 8, 2017

*Of Counsel*
Max Moskowitz, Esq., *Pro Hac Vice*
Ostrolenk Faber LLP
1180 Avenue of the Americas, New York, NY 10036
New York, NY 10036
(212) 596-0500

Kenneth J. Kelly, Esq., *Pro Hac Vice*
Epstein Becker & Green, P.C.
250 Park Avenue, New York, NY 10177
(212) 351-4606

NIRO LAW GROUP, LLC
By:     /s/ Christopher W. Niro
        Christopher W. Niro
        135 S. LaSalle St., Suite 3025
        Chicago, IL 60603
        (312)767-2086

        ***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 8, 2017 the foregoing

**Memorandum of Law in Support of Defendants' Motion to Dismiss, Pursuant to Rule 12(b)(6), Count I, Count II (relative to the '211 Patent) and Count III of the Complaint and Declaration of Arthur Joseph Lipton and Exhibits**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record.

> **Robert Geoffrey Cooper**
>
> **Mitchell S. Chaban**
> Levin Ginsburg
> 180 North LaSalle Street, Suite 3200
> Chicago, IL 60601-2800
> 312-368-0111
>
> 312-368-0100
> Email: rcooper@lgattorneys.com
> Email: mchaban@lgattorneys.com

/s/ *Christopher W. Niro*
Attorneys for Defendants
NIRO LAW GROUP, LLC

16