UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEMSHARES LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:17-cv-06211 |
| ARTHUR JOSEPH LIPTON and SECURED WORLDWIDE, LLC, | ) Hon. Matthew F. Kennelly |
| Defendants. | ) |
| AND | ) |
| ARTHUR JOSEPH LIPTON and SECURED WORLDWIDE, LLC, Counterclaim Plaintiffs | ) |
| v. | ) |
| GEMSHARES LLC Counterclaim Defendant | ) |

## SECOND DECLARATION OF ARTHUR JOSEPH LIPTON

I, Arthur Joseph Lipton, declare as follows:

1. I submit this Declaration in support of the concurrently filed Motion to Dismiss the First Amended Complaint, on behalf of the Defendants Secured Worldwide, LLC ("SWW") and myself, the individual Defendant Arthur Joseph Lipton.

2. I reside in Connecticut, but work in New York City. I am the CEO of the Defendant SWW and have been also, since 2012, a member/shareholder of the Plaintiff GemShares LLC ("GemShares"), in which I have invested $250,000.

{02160605.1}  1

## GEMSHARES

3. GemShares was established (in 2008) to create financial markets, i.e. tradable securities, ETF funds, and the like, underpinned by diamonds, similar to long existing securities and ETF funds that are underpinned by commodities such as barrels of oil, bushels of wheat, bars of gold.

4. A succinct statement of the nature of GemShares business is provided at its website www.gemshares.com where under "SERVICES," GemShares states:

> *Our services provide a financial index in the nature of quantitative measurements for analyzing investor attitudes in the field of investment grade gemstones; we will help you evaluate and appraise the suitability of gemstones for others for use as a component of equities, options, and futures contracts for trading on domestic and foreign exchanges and develop voluntary global standards for investment grade gemstones. We also provide financial services in trading of funds based on precious or semiprecious stones, trading of securities, options, derivatives and commodities based on precious or semiprecious stones as well as creation of funds and securities based on a standardized volume (basket) of precious or semiprecious stones.*

5. The founding shareholders of GemShares are all individuals with deep-rooted connections in the financial markets, individuals who have the names, contact information and ability to reach the most influential "Wall Street" people and financial markets leaders.

6. To date, after about nine years, GemShares' investment of about $2,000,000, including my own $250,000, and arduous human efforts trying to create diamond-based financial markets and related financial instruments, have all come to nothing.

7. To my knowledge, GemShares is not a going concern, does not have any employees or its own business office, other than a contact address at shareholder Sharon

{02160605.1} 2

Karsten's home at 1330 W. Monroe St., Chicago, Illinois. In short, GemShares is a failed enterprise.

8. To my knowledge, GemShares expended the $2,000,000 mostly on legal work, including patent drafting and prosecution services, corporate legal work and a lesser portion on travel, website, software and general administrative expenses.

9. To my knowledge, GemShares never got to the point of creating any software or anything tangible that implements any of the systems and mathematical formulas and data bases described in GemShares' U.S patent No. 8,239,211 ("the '211 patent") and No. 8,076,513 ("the '513 patent").

## THE VULT PRODUCT

10. In 2013, I conceived/invented the idea of creating a non-replicable, impenetrable and portable diamond package, essentially a portable diamond vault, in which diamonds are stored. I conceived that these portable diamond vaults would be marketed to consumers directly and that consumers would hold these vaults as "stores" of liquid wealth, as they would be able to resell them to other consumers, via consumer-to-consumer selling channels, e.g. EBay.

11. I understood that implementing this concept would require a completely new packaging method and technology that produced an impenetrable body that would prevent exchanging the packaged diamonds, a package with internal electronics and other features that would create a system that could authenticate each individual package, so that previously sold diamond packages could be easily sold by consumers to each other, free of worries or concerns of counterfeits or the like.

{02160605.1} 3

12. In late 2013/early 2014, I formed the Defendant SWW, gathered a team of investors, including Jay Plourde and Mark Lieberman, and hired Cormac Kinney as a Chief Technologist for SWW, to help design the necessary mechanical, electronic and software components, to make my invention a reality.

13. After an investment of more than ten (10) million dollars, consisting of more than $1,600,000 of my own money, my concept of a credit card sized, portable vault for diamonds became a reality in the form of the product called the VULT.

14. SWW filed a patent application, still pending, directed to the technology of the VULT and its infrastructure, which includes the inventive contributions of the named inventors Cormac Kinney, Jay Plourde and myself, which application was assigned to SWW ("the SWW Patent Application").

15. In the Kinney Case referred to in the Complaint, the Court in New York held that Kinney owns an undivided 100% interest in the SWW Patent Application.

16. The VULT product is depicted below.



## THE INFRINGEMENT ALLEGATIONS

17. I am not a patent professional, not an inventor on any GemShares patents and do not know the meaning of "patent claims" or how to determine whether a product infringes on a patent. But to my knowledge, no one at or working for SWW has ever used or implemented any formulas or equations for calculating any of the variables described in the GemShares patents, and likewise, no one at or working for SWW has ever used or implemented or even consulted any diamond selection scheme or method that is described in the GemShares patents.

18. To date, neither I nor (to my knowledge) SWW, nor anyone retained by SWW has ever even commenced creating or using any equation or formula that calculates or obtains the financial "Index" or the "Intraday pricing" values that are at the heart of the GemShares financial instruments trading system contemplated by GemShares. The equations listed below appear in the independent patent claims of the GemShares '211 patent, and require obtaining or calculating active market parameters, such as interest rates, fund interest income, fund expenses, an active front month futures contract price and other such parameters, as defined in the '211 patent (at col.13 thereof):

$$\text{Index} = \text{NAV} = X_0(Y_0) + Y_1(Y_1) + FI - FE.$$

$$\text{Intraday pricing} = \text{NAV} = X_0(Y_0) + X_1(Y_1) + FI - FE.$$

19. To date, neither I nor (to my knowledge) SWW, nor anyone retained by SWW has ever created nor used nor sold:

a) a fungible basket of investment grade gems for use in conjunction with financial instruments, which I am informed is described in independent claim 1 of the '513 patent;

b) a system for trading a collection of diamonds as part of a financial instrument, which I am informed is described in independent claim 7 of the '513 patent;

c) a fungible collection of investment grade gems for use in conjunction with financial instruments, which I am informed is described in independent claim 12 of the '513 patent; and/or

d) a fungible collection of investment grade gems for use in conjunction with financial instruments, which I am informed is described in independent claim 18 of the '513 patent.

## INTERACTION WITH GEMSHARES

20. In late 2013, prior to establishing SWW, I first disclosed my concept of what is now the VULT product to GemShares. My pitch to the GemShares members was that creating such a physical diamond package, would create a huge market for selling diamonds directly to consumers for "investment" purposes, and this, in turn, would enhance GemShares business prospects by convincing the Wall Street community to establish financial exchanges that trade diamond based securities and ETF funds.

21. To my knowledge, GemShares never even conceived selling physical diamonds to consumers, prior to my disclosing my concept/invention to GemShares.

22. In response to months of attempts to get GemShares interested in my ideas, GemShares leader Victor Feldman finally telephoned me that they were making me a "passive" investor of GemShares. GemShares' secretary Sharon Karsten then sent an email that she has taken me off the regular GemShares "Management Calls." Thus, it became crystal clear to me that the GemShares founders had no interest in investing any funds or human time and efforts in my ideas, and would not pursue my concept of a physical consumer diamond package as described above.

23. The VULT would not have come into being without the years long efforts of many people and the investment of over ten (10) million dollars ($10,000.000) of my own and other peoples' funding as described above.

24. However, at the same time that SWW was developing VULT, I was thinking about my $250,000 investment in GemShares, which I did not want to lose.

25. Hence, beginning in 2014 and regularly thereafter, I kept Victor Feldman, the driving force and main investor in GemShares' project, regularly informed of SWW's activities, including by personally delivering to Feldman, in Chicago in 2014, the printed brochure depicting the VULT product and describing its attributes to the consumer. (See **Exhibit A**).

26. I always believed that GemShares' difficulties in creating diamond-based financial markets could be helped by SWW's creation of a consumer product for physical diamonds purchased for investment purposes, and simultaneously, that the GemShares patents in suit here, if licensed to SWW would assist SWW's marketing efforts for the VULT through added credibility. I was therefore always seeking to establish a "business cooperation" framework that would produce mutual benefits to both GemShares and SWW.

27. My 2014 correspondence with Mr. Feldman (attached as **Exhibit B**) reflects that Mr. Feldman kept me apprised of the activities of GemShares and at the same time requested that I report on the activities of SWW throughout the past several years.

28. My initial hopes that my concepts would be quickly implemented in hardware and software, and would be quickly embraced by the marketplace failed to materialize. The technical and software work provided by Cormac Kinney did not work. The litigation with Mr. Kinney referred to in the instant Complaint, caused further delays. Millions of dollars and about three years were needed to produce the final VULT product and its IT and marketing infrastructure.

## **THE SWW BUSINESS**

29. By the middle of 2016, it became apparent to me that the marketplace was not ready to embrace the VULT products and business concepts. This was due primarily to what I believe was a lack of faith that a startup entity such as SWW had the financial wherewithal and the historical operating experience to assure consumers that the VULT product would become popular and that consumers would have a ready market for selling VULTs to one another.

30. As a result, to date, SWW has sold only 25 of the VULT products and of those, only 13 to United States based consumers, and none to anyone residing in the Court's District, nor in the State of Illinois.

31. SWW does not have any business office, or any employee, nor any representative located in Illinois.

32. I have never personally sold any VULT product or pitched the sale of a VULT product on my own behalf, other than exclusively for and as an officer of SWW.

33. The litigation with Cormac Kinney came close to destroying SWW during the second half of 2016 as SWW was without any funds, and without a seeming path to survival as a going concern.

34. SWW is basically being rescued by a wealthy Malaysian citizen named Francis Yeoh, who became aware of the VULT product and expressed an interest in the business of VULT owing to the following circumstances.

35. Mr. Yeoh had previously invested in a Singapore-based company called SDIX which, beginning in 2012, actually formed a mercantile market for selling diamond-based, financial instruments in Singapore. Mr. Yeoh invested a substantial sum of money in the SDIX operation.

36. I was informed that the SDIX operation was not particularly successful although Mr. Yeoh was interested in supporting the growth of the SDIX operation.

37. Mr. Yeoh felt that if the VULT product became a popular consumer product, the general consumer interest in physical diamonds would aid the creation of a parallel market in "financial instruments" that are underpinned by diamonds. Exactly what I had tried to do with GemShares.

38. After exhaustive negotiations, Mr. Yeoh has agreed to invest $5,000,000 in SWW and become a shareholder thereof. SDIX, Mr. Yeoh and SWW discussed forming a Singapore company called the Singapore Diamond Mint ("SDM") to market the VULTs. Neither I nor SWW have any ownership rights in SDM.

39. The overall concept (not yet implemented) is that, going forward, SWW will manufacture and sell to SDM VULT-like products branded DIAMOND BULLION, for SDM to sell these products throughout the world.

40. To date, SDM and SWW have collaborated on some sample products.

41. Presently, I am a minority shareholder of SWW, the other shareholders including twenty four (24) individuals and legal entities, some located abroad.

42. As noted above, during the period 2014-2017, I communicated and even personally met with Victor Feldman and others of GemShares, always proposing that GemShares and SWW evolve some type of a mutually beneficial "cooperation agreement."

43. During the New York litigation with Cormac Kinney, Mr. Kinney requested GemShares to voluntarily accept a subpoena for deposition of the members of GemShares, which it refused. But, GemShares' Victor Feldman provided deposition testimony for that litigation.

44. Although to my knowledge Victor Feldman was aware that Mr. Kinney is asserting that he <u>alone</u> invented the VULT product and that he requested exclusive ownership of the pending SWW Patent Application (in suit here), GemShares at no point sought to intervene and make itself a party in the New York Kinney litigation, GemShares counsel John Sibrava writing "*GemShares, LLC has assumed a hands-off position in regard to the litigation between you, Secured World, LLC (sic) and Joseph Lipton. GemShares, LLC is neither an adversary of nor an advocate for you or anyone else in the litigation.*" (See **Exhibit C**). Yet, in the present Action, GemShares is seeking a Declaration of Ownership of the same SWW Patent Application.

45. In late 2016, and several times in 2017, I disclosed to Mr. Feldman that SWW will invested with $5,000,000 by Francis Yeoh. This lawsuit followed shortly after my last discussion with Mr. Feldman.

46. I am concerned that GemShares' present action was conceived to usurp and disburse to the GemShares' members the $5,000,000 invested in SWW by Mr. Yeoh, and to undeservedly bestow upon GemShares the benefits of the monetary and intellectual investments of the SWW investors and employees.

I declare under penalty of perjury that the foregoing is true.

November 8, 2017

_____
Arthur Joseph Lipton