IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEMSHARES LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17 C 6221 |
| ARTHUR JOSEPH LIPTON and SECURED WORLDWIDE, LLC, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

GemShares LLC sued Arthur Lipton and Secured Worldwide, LLC alleging, among other claims, that Lipton breached a covenant not to compete by forming Secured Worldwide to develop a product that used GemShares' intellectual property. GemShares has moved for partial summary judgment on its breach-of-contract claim.

## Background

GemShares developed and patented a system for valuating precious stones and organizing them into "fungible baskets" of equal value that could serve as investment products. Lipton invested in the company in 2013 and signed the GemShares LLC Operating Agreement, which, among other restrictions, barred Lipton from competing with GemShares or assigning his interests in its intellectual property.

After investing, Lipton repeatedly encouraged the company to develop a physical product it could sell directly to consumers. GemShares was apparently uninterested in this proposal, however, and in November 2013 Lipton brought together a team of

investors to create Secured Worldwide, LLC. One of those investors was Cormac Kinney, who contributed his mechanical, electronic, and software expertise to help Secured Worldwide develop a small, portable diamond vault called VULT. Secured Worldwide applied for a patent on its product.

In 2015, Secured Worldwide sued Kinney in the United States District Court for the Southern District of New York, alleging that Kinney committed various trademark and patent infringements and breached his employment contract. Kinney asserted counterclaims, including one for fraudulent inducement to contract based on Lipton and Secured Worldwide's misrepresentations that Secured Worldwide had permission to use GemShares' patent, and he joined Lipton to the suit as a defendant on the counterclaim. The case proceeded to a bench trial, during which Secured Worldwide elicited testimony from Lipton that he believed he did not need GemShares' permission because their products were sufficiently different. The court ultimately found in favor of Kinney on the counterclaim, concluding that Kinney reasonably relied on Lipton's fraudulent misrepresentation that Secured Worldwide had permission to use GemShares' intellectual property.

In 2017, GemShares filed the present lawsuit against Lipton and Secured Worldwide. GemShares alleges that Lipton infringed its patent, breached the non-compete covenants in the Operating Agreement, and violated his fiduciary duty to the company. It has moved for partial summary judgment on the breach-of-contract claim.

## Discussion

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

2

*Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018). In ruling on a motion for summary judgment, the Court construes the evidence and draws all reasonable inferences in favor of the non-moving party. *Lapre v. City of Chicago*, 911 F.3d 424, 430 (7th Cir. 2018). The moving party is entitled to summary judgment if "no reasonable jury could find for the other party based on the evidence in the record." *Martinsville Corral*, 910 F.3d at 998.

## A. Issue preclusion

GemShares' sole argument in support of its request for partial summary judgment is that the trial judge's ruling in the Southern District of New York precludes Lipton from relitigating his liability for breach of contract. The court issued that ruling on December 15, 2016 following a bench trial on Secured Worldwide's claims against Kinney and Kinney's counterclaims against Secured Worldwide and Lipton. *See Secured Worldwide, LLC v. Kinney*, No. 15 Civ. 1761 (S.D.N.Y. Dec. 15, 2016). The court held Secured Worldwide liable on Kinney's counterclaim for fraudulent misrepresentation. The court made two sets of findings relevant to GemShares' motion for partial summary judgment. First, it concluded that the "proposed Secured Worldwide Vult meets the DX-2 definition of a Gemstone Financial Product," meaning that Lipton and Secured Worldwide "could not produce it without obtaining the permission of his former partners" under the non-competition clause of the Operating Agreement. *Id.* ¶ 36. The court found that Lipton nonetheless "decided to go ahead with his commercial venture (now named Secured Worldwide) without obtaining GemShares' consent." *Id.* ¶ 37.

Second, the court concluded that Lipton's misrepresentations to Kinney were

material because the VULT product directly relied on GemShares' patented technology. The court found that "Lipton intended to use GemShares' patented process to sort the diamonds into baskets" and that "Lipton's testimony that he did not need a patent license because there would be no competition between his commercial product and GemShares' financial product is utterly and completely incredible." *Id.* ¶ 35. Based on these findings, the court concluded that "Kinney had good reason for his belief" that "Lipton needed a license from GemShares to create his contemplated commercial product." *Id.* ¶ 34; *see also id.* ¶ 62 ("Kinney reasonably believed that a license from GemShares would be required to create the [VULT product]. . . . Secured Worldwide intended to use GemShares' patented process to create baskets of diamonds; that alone required a license from the patent holder, which was GemShares.").

When a federal court must determine whether to give issue-preclusive effect to the judgment of another federal court sitting in diversity, it typically applies the issue-preclusion principles of the state whose law applied in the prior federal court case. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits."). Because Kinney brought his fraudulent misrepresentation counterclaim under New York law, New York's rules of preclusion govern this case. And no conflict with federal interests precludes applying New York law in this case. *See Semtek Int'l*, 531 U.S. at 509 ("The federal reference to state law will not obtain . . . in situations in which the state law is incompatible with federal interests.").

Issue preclusion, also known as collateral estoppel, bars a party from "relitigating

4

in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 94 N.Y.2d 426, 431-32, 727 N.E.2d 543, 546 (2000). In order for issue preclusion to apply, the issue must have been "raised, necessarily decided and material in the first action," and the party against whom issue preclusion is being invoked must have had a "full and fair opportunity to litigate the issue in the earlier action." *Id.*

### 1. Identity of issues

The defendants first argue that the issue in this case—whether Lipton breached the covenant not to compete—is not identical to the issue decided in the *Kinney* case. Defendants emphasize that for the purpose of resolving Kinney's claim for fraudulent misrepresentation, the court in the New York case needed to determine only whether Secured Worldwide lacked permission to use GemShares' intellectual property and whether Lipton's claim that Secured Worldwide had that permission was a material misrepresentation on which Kinney relied. The defendants contend that, under this framework, "Kinney's claim did not turn on the necessity of the license," and that the court in *Kinney* therefore did not decide the central issue this case. Defs.' Resp. Br., dkt. no. 100, at 11.

The non-compete clause in the Operating Agreement precluded Lipton from "engag[ing] in any business, enterprise, trade, profession or employment that is competitive with the Company and is related to any Gemstone Financial Product . . . ." Pl.'s L.R. 56.1 Stat. (GemShares LLC Operating Agreement), dkt. no. 84-2, Ex. A at 8. Whether Lipton breached this provision therefore turns on two separate questions: whether Secured Worldwide's business was related to a Gemstone Financial Product

and whether it was competitive with GemShares.

The ruling by the district judge in the Southern District of New York decided both of these questions. First, the judge expressly found that the VULT product was a Gemstone Financial Product as defined by the Operating Agreement. *See Kinney*, ¶ 36. Second, the court found that Secured Worldwide was competitive with GemShares in reaching its conclusion that Lipton's misrepresentations to Kinney were material. In discussing materiality, the court stated that "Lipton's testimony that he did not need a patent license because there would be no competition between his commercial product and GemShares' financial product is utterly and completely incredible." *Id.* ¶ 35 (citation omitted). The court also noted that "Lipton's testimony that no license would have been required is contradicted by his own contemporaneous statements and is entirely incredible." *Id.* ¶ 62. Because the court made specific factual findings about the two elements that are necessary to establish Lipton's breach of the non-compete clause, if those findings are given preclusive effect they require this Court to find that Lipton breached the agreement.

The fact that the court could have reached its holding without reference to Lipton's actual obligations or his competitive activities—for example, by finding that Kinney's belief in the need for GemShares' permission was genuine but mistaken—is irrelevant. The court made specific findings on the relevant issues, obviating any potential ambiguity about what it decided. *Cf. Kret by Kret v. Brookdale Hosp. Med. Ctr.*, 93 A.D.2d 449, 458–59, 462 N.Y.S.2d 896, 902 (1983) (holding that a jury's special verdict on particular issues made it immaterial that the judgement "could have proceeded on any of several distinct theories"). Those findings were necessary to the

6

court's conclusion that Lipton's misrepresentations were material, and they therefore satisfy the requirement that the findings must be essential to the court's judgment rescinding Kinney's employment contract. See *Kinney*, ¶ 66 (rescinding the contract); see also *Kleinknecht v. Siino*, 165 A.D.3d 936, 939, 86 N.Y.S.3d 577, 580 (2018) ("For [issue preclusion] to apply, the issue must have been material to the first action and essential to the decision rendered therein.").

### 2. Full and fair opportunity to litigate

The defendants next argue that they lacked a full and fair opportunity to litigate this issue before the court in *Kinney* because the court excluded evidence that Lipton breached his obligations to GemShares. They cite the court's ruling granting Secured Worldwide's motion in limine to preclude Kinney "from introducing evidence relating to Lipton and Secured Worldwide's alleged violation of obligations to or rights of Gemshares." Pl.'s L.R. 56.1 Stat. (Rulings on Motions in Limine), dkt. no. 84-11, Ex. J at 2.

The in limine ruling did not deprive Secured Worldwide or Lipton of a full and fair opportunity to litigate the relevant issues. First, by its own terms, the ruling in limine barred only Kinney from introducing this evidence; the ruling did not deny Lipton or Secured Worldwide the chance to introduce evidence on that point. The court further clarified its ruling by issuing a supplemental order to specify that the parties were permitted to discuss GemShares, and that Kinney was barred only from seeking to "prosecute claims on Gemshares' behalf." Pls.' Reply Br. (Supp. Ruling in Limine), dkt. no. 107, Ex. F at 1.

Second, Secured Worldwide and Lipton *did* litigate the issue. Their attorney

repeatedly elicited testimony from Lipton on direct examination about whether he believed Secured Worldwide needed permission from GemShares to create the VULT product. The court considered this testimony in determining that Secured Worldwide did, in fact, need that permission because it sought to use GemShares' patented process. *See Kinney*, ¶¶ 35-36, 62.

Third, the defendants have failed to identify any additional evidence they would or could have introduced to prove that they did not breach the covenant not to compete, making their allegations of unfairness purely conjectural. And even if the defendants had identified that evidence, the fact that they wish in retrospect that they had introduced more or different proof on this question does not mean that they were deprived of the opportunity to do so. *Cf. Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982) ("The fact that Mr. Kremer failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy.").

### 3. Fairness factors

The defendants argue that even if the ruling of the court in *Kinney* meets the criteria for issue preclusion, this Court should nonetheless decline to give the ruling issue-preclusive effect because it would be unfair to do so. They cite *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), in which the Supreme Court explained that "in cases where a plaintiff could have easily joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.* at 331. New York law views collateral estoppel through a similar equitable lens: "In every case, the question of fairness in its application must be the crowning consideration." *Kret*, 93 A.D.2d at 456,

462 N.Y.S.2d at 901 (internal quotation marks omitted).

The defendants' arguments on this point overlap to a significant extent with the arguments the Court has already discussed. They make two fairness arguments that warrant separate consideration, however: first, that GemShares unfairly failed to intervene in the *Kinney* case, and second, that Secured Worldwide lacked sufficient incentives to litigate these issues.

### a. GemShares' failure to intervene

The defendants argue that GemShares could have intervened in the *Kinney* case but failed to do so in order to gain a strategic advantage in the event that the court made favorable findings. GemShares disputes that characterization, arguing that because the Operating Agreement contains a venue provision requiring any dispute to be brought in this district, it could not have intervened. *See* Operating Agreement, dkt. no. 84-2, at 45-46. This argument is unconvincing, however, because the forum selection clause would not have made New York federal court an improper venue for GemShares' claims. *See Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 57 (2013) ("[V]enue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause . . . .").

The defendants have nonetheless failed to show that GemShares' decision not to intervene the *Kinney* case would make applying issue preclusion in this case unfair. The purpose of the limitation on offensive collateral estoppel in cases where the plaintiff could have joined the earlier action is to prevent strategic behavior that results in more litigation. As the Supreme Court explained in *Parklane Hosiery*, the risk is that plaintiffs might adopt "a 'wait and see' attitude, in the hope that the first action by another plaintiff

9

will result in a favorable judgment." *Parklane Hosiery*, 439 U.S. at 330. In this case, the defendants have not shown that GemShares sought that type of strategic advantage. As the court in *Kinney* made clear in its rulings in limine, the question of Secured Worldwide or Lipton's liability to GemShares' was not squarely before the court. Given the oblique relationship between these two cases, it is not obvious that GemShares could have intervened under Federal Rule of Civil Procedure 24 or that GemShares saw any reason to do so. Indeed, a letter from a GemShares officer to Lipton suggests that GemShares viewed the *Kinney* litigation as a "distraction[]." Ex. C to Lipton Decl., dkt. no. 99-3, at 1. Because GemShares' decision not to intervene is susceptible to "numerous possible explanations," the Court "decline[s] to speculate on motivation." *Starker v. United States*, 602 F.2d 1341, 1349 (9th Cir. 1979).

      **b.**    **Incentive to litigate**

Finally, the defendants argue that it would be unfair to give issue-preclusive effect to the ruling of the court in *Kinney* because they lacked sufficient incentive to litigate the issue of whether Secured Worldwide needed GemShares' permission to develop the VULT product. They cite the district court's in limine ruling as evidence that they were disincentivized from introducing evidence about their obligations to GemShares.

The defendants in this case had more than adequate incentive to litigate the relevant issues. First, as the Court noted above, the in limine rulings did not preclude Secured Worldwide from introducing evidence about its obligations to GemShares, and in fact they did exactly that by eliciting testimony from Lipton on the subject. Second, the potential damages were sufficiently high to warrant vigorous litigation; Kinney

sought several million dollars on his counterclaims. *See Shaid v. Consol. Edison Co. of N.Y., Inc.*, 95 A.D.2d 610, 615, 467 N.Y.S.2d 843, 847 (1983) ("[T]he size of the claim . . . obviously relates to the party's *incentive* to litigate."). Finally, as the district court's ruling illustrates, the issue of whether Secured Worldwide needed GemShares' permission was highly relevant to the question of materiality—which is presumably why Secured Worldwide questioned Lipton about it. The Court concludes that the *Kinney* litigation afforded Secured Worldwide sufficient incentives to litigate the issue that applying collateral estoppel would not be unfair.

**B.    GemShares' entitlement to summary judgment**

The parties' briefs focus exclusively on whether the *Kinney* decision has issue-preclusive effect. Neither party specifically discusses whether applying issue preclusion requires granting summary judgment for GemShares on its breach-of-contract claim. And the parties have not identified which state's law applies to the breach-of-contract claim or discussed whether a reasonable jury could find in the defendants' favor with respect to any element of that claim. Without knowing exactly what sort of determination GemShares seeks, the Court cannot grant its motion for partial summary judgment at this point despite having determined that issue preclusion applies.

**Conclusion**

For the foregoing reasons, the Court finds that the ruling of the District Court for the Southern District of New York in *Secured Worldwide v. Kinney* precludes the defendants from relitigating the issue of whether Lipton breached the covenant not to compete. The Court declines to rule on the plaintiff's motion for partial summary judgment [dkt. no. 81] because the parties' briefs fail to discuss whether, and to what

extent, GemShares is entitled to summary judgment on the basis of the issue-preclusion finding. The case is set for a status hearing, to be conducted by telephone, on February 1, 2019 at 8:30 a.m. Counsel are to jointly call chambers (312-435-4618).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 25, 2019