IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEMSHARES LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17 C 6221 |
| ARTHUR JOSEPH LIPTON and SECURED WORLDWIDE, LLC, | ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

GemShares LLC has sued Arthur Lipton and Secured Worldwide, LLC, alleging, among other claims, that Lipton breached a covenant not to compete by forming Secured Worldwide to develop a product that used GemShares' intellectual property. The Court previously ruled that Lipton is collaterally estopped from relitigating the question of whether he breached a contractual covenant not to compete and granted summary judgment in favor of GemShares' on Lipton's liability for breach. In light of those rulings, GemShares has moved for equitable relief and attorney's fees.

## Background

The Court assumes familiarity with its prior written decisions in this case. *See GemShares LLC v. Lipton* (*Motion to Dismiss Order*), No. 17 C 6221, 2018 WL 827962 (N.D. Ill. Feb. 11, 2018); *GemShares LLC v. Lipton* (*Issue Preclusion Order*), No. 17 C 6221, 2019 WL 330470 (N.D. Ill. Jan. 25, 2019); *GemShares LLC v. Lipton* (*Order on Liability for Breach*), No. 17 C 6221, 2019 WL 587392 (N.D. Ill. Feb. 13, 2019). The

following is an abridged summary of the relevant procedural history.

In June 2018, GemShares moved for partial summary judgment on count 4 of its amended complaint, in which it alleged that Lipton breached a non-compete provision of GemShares' operating agreement. The sole basis on which GemShares sought summary judgment was the earlier decision of a federal district court in New York in related litigation between Lipton and Cormac Kinney, an investor in Lipton's company Secured Worldwide. GemShares argued that the New York court's ruling precluded Lipton from relitigating the issue of whether he had breached the non-compete provision.

In a written decision, the Court found that issue preclusion applied but deferred ruling on Lipton's liability for breach of contract because neither party had adequately addressed the other elements of the claim. *Issue Preclusion Order*, 2019 WL 330470, at *5. After the parties submitted additional briefing, the Court granted summary judgment in favor of GemShares on the claim for breach of contract. *Order on Liability for Breach*, 2019 WL 587392, at *2. Lipton moved for reconsideration of that decision, a motion the Court denied. Dkt. no. 206.

GemShares has moved for equitable relief on its breach-of-contract claim. Specifically, it asks the Court to permanently enjoin Lipton and Secured Worldwide from violating the non-compete provision and to assign to GemShares Lipton's interest in a particular patent application. It has also requested an award of attorney's fees. For the reasons stated below, the Court grants the motions for the injunction and assignment of patent rights but declines to rule on the fee request at this stage.

## Discussion

### A. Permanent injunction

A party seeking a permanent injunction must prove four elements: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).

#### 1. Enforceability

Lipton first argues that the non-compete provision of the GemShares operating agreement is unenforceable because it is overly broad. The provision states:

> [A]ll Interest Holders shall not, until the dissolution of the Company or until the first anniversary of the effective date of termination of their respective status as an Interest Holder, engage in, acquire or own any interest in, or assist any person who or which, directly or indirectly through any other person, engages in any business, enterprise, trade, profession or employment that is competitive with the Company and is related to any Gemstone Financial Product, as defined herein. For purposes hereof, a business, enterprise, trade, profession or employment is competitive with the Company if it pursues and conducts, in whole or substantial part, the same purpose and business as the Company . . . .

GemShares Operating Agreement, Ex. A to Chaban Decl., dkt. no. 84-2, § 3.02(a).

Although Illinois law generally disfavors restrictive covenants in employment agreements, this policy "is best understood as resting on a concern that employees can be tricked into making promises that seem of small detriment but later prove to be disabling." *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 634 (7th Cir. 2005). For this reason, Illinois "is quite willing to enforce covenants executed by entrepreneurs in order to form or sell a business." *Id.* Because GemShares alleges

3

that Lipton breached the non-compete clause through his entrepreneurial activities, GemShares must show that it has a "protectable business interest which has been injured" by Lipton's breach and that the restraint on competition "is reasonable as to time, geographical area and scope of prohibit[ed] business activities." *Cent. Water Works Supply, Inc. v. Fisher*, 240 Ill. App. 3d 952, 958, 608 N.E.2d 618, 622–23 (1993).

Lipton first argues that GemShares does not have a protectable interest. He contends that GemShares "does not have any actual business; it has never had any revenue, does not have any customers and has never established or created" any financial or commercial products. Lipton's Resp. Br., dkt. no. 202, at 9. But Lipton does not cite any authority suggesting that protectable interests can exist only if a business has brought a product to market. Rather than turning on such a bright-line rule, "whether a legitimate business interest exists is based on the totality of the facts and circumstances of the individual case." *Reliable Fire Equip. Co. v. Arredondo*, 2011 IL 111871, ¶ 43, 965 N.E.2d 393, 403. GemShares has pointed to evidence that Lipton's competition interferes with its ability to recruit investors and business partners. And, as the district court in the *Kinney* case found, Lipton intended to use GemShares' patented processes for creating baskets of diamonds to develop his competing product. *See Secured Worldwide, LLC v. Kinney*, No. 15 Civ. 1761, ¶ 62 (S.D.N.Y. Dec. 15, 2016). Under these circumstances, GemShares has a protectable interest in the enforcement of the non-compete clause.

Next, Lipton contends that the non-compete provision is unenforceable because it does not contain a geographic limitation. "Although a lack of geographic limits is not per se unreasonable, the complete bar on competition needs to be reasonably related

4

to the promisee's interest in protecting his own business." *Liautaud v. Liautaud*, 221 F.3d 981, 987 (7th Cir. 2000). GemShares has pointed to evidence that its business plan involves global financial markets, and any breach of the non-compete clause—no matter where it occurs—therefore risks injury to the company. The lack of a geographic limitation thus does not render the non-compete provision unenforceable.

Lipton also argues that although the non-compete provision lasts only for one year after a member's withdrawal, GemShares artificially extended that timeline by making him a passive member. He contends that this caused the non-compete agreement to extend indefinitely. But Lipton does not explain why he could not simply withdraw of his own accord, and the Court therefore concludes that the non-compete clause is not unreasonable with respect to its duration. *See Zabaneh Franchises, LLC v. Walker*, 2012 IL App (4th) 110215, ¶¶ 21, 23, 972 N.E.2d 344, 350–51 (finding reasonable a non-compete provision that for lasted two years after the cessation of employment).

### 2. Unclean hands

Lipton argues that even if the non-compete provision is reasonable, GemShares is barred from enforcing it under the doctrine of unclean hands. "The doctrine applies if the party seeking equitable relief is guilty of misconduct, fraud or bad faith toward the party against whom relief is sought if that misconduct is connected with the transaction at issue." *Coexist Found., Inc. v. Fehrenbacher*, 865 F.3d 901, 908 (7th Cir. 2017) (quoting *Long v. Kemper Life Ins. Co.*, 196 Ill. App. 3d 216, 219, 553 N.E.2d 439, 441 (1990)). Lipton contends that GemShares acted in bad faith by waiting to move for an injunction until after he had already invested significant time and energy in developing

5

his commercial product. This bad-faith delay, he argues, precludes granting equitable relief.

Lipton has not shown that GemShares engaged in the kind of affirmative misconduct that would prevent it from obtaining a permanent injunction. GemShares submitted letters it sent to Lipton in 2014 and 2017, as well as deposition testimony from Lipton and others, that reflect long-term efforts to negotiate an agreement short of litigation. Nothing other than Lipton's speculation suggests that these efforts were undertaken in less than good faith. The Court concludes that Lipton has failed to meet his burden to prove unclean hands. *See Brown v. Ryan*, 338 Ill. App. 3d 864, 875, 788 N.E.2d 1183, 1192 (2003) ("The party making the contention must prove that the other party is, in fact, guilty of fraud or bad faith toward those making the contention.").

### 3. Irreparable harm

Lipton next argues that GemShares cannot establish that it has been irreparably harmed. "To say that an injury is irreparable means that the methods of repair (remedies at law) are inadequate." *Fleet Wholesale Supply Co. v. Remington Arms Co.*, 846 F.2d 1095, 1098 (7th Cir. 1988). And a remedy at law is inadequate if "it is not practicable to calculate damages to remedy" the kind of harm that the plaintiff has suffered. *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003).

GemShares points to section 12.03 of the operating agreement, which states,

> It is expressly stipulated and agreed that the payment of damages will not in all cases fully compensate the Company against further losses and damages in the event of breach or violation of . . . Sections 3.02, 3.03 and 3.04 of Article III . . . which shall render the Company without an adequate remedy at law. Therefore, the aforesaid provisions may be enforced by the Company by negative or affirmative injunctive relief, whether permanent, preliminary, or both, granted by any court of competent jurisdiction . . . .

GemShares Operating Agreement, Ex. A to Chaban Decl., dkt. no. 84-2, § 12.03.  The Seventh Circuit has held that parties may stipulate to the adequacy of particular remedies if there is "no reason to doubt either the propriety or adequacy of the remedial measures" to which the parties agreed.  *Kowalski v. Chi. Tribune Co.*, 854 F.2d 168, 171 (7th Cir. 1988); *cf. Owens*, 415 F.3d at 634 ("An agreement *ex ante* among the entrepreneurs that these [non-compete] covenants do fit their needs . . . is the sort of exchange that any jurisdiction must enforce if it wants to promote the formation and success of new businesses.").

GemShares also argues that monetary relief is inadequate in the particular context of Lipton's breach.  It relies on the declaration of Daniel Gramza, one of five members of GemShares, who attests that Lipton's violations have affected the company's "ability to conduct and grow its business."  Gramza Decl., dkt. no. 196–1, ¶ 8.  In particular, Gramza states that Lipton's competitive conduct prevents GemShares from recruiting potential investors and business partners, and that the existence of a competing product creates market confusion and interferes with the efforts to create interchangeable financial and commercial products.  Because there is no practicable way to calculate the financial harm caused by this competition, GemShares has sufficiently established that a remedy at law is inadequate.  *See, e.g.*, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008) (noting that one "circumstance leading to an inadequate legal remedy is when the nature of the loss incurred by the plaintiff makes it difficult to calculate damages").

Lipton's counterarguments are unavailing.  First, he contends that GemShares' delay in moving for injunctive relief belies its claim of irreparable harm—in other words,

7

the fact that it did not immediately seek to enjoin Lipton proves that its business interests were not at risk. In particular, he emphasizes that GemShares did not file a motion for a preliminary injunction at the outset of the case. But during that time period, GemShares continually negotiated with Lipton in an effort to resolve their dispute. As the Second Circuit has noted, "the plaintiff's decision to try to bring a speedy resolution to the entire matter rather than expend its resources on temporary relief does not mean that the plaintiff had no interest in a speedy resolution of its claims against the defendants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 104 n.20 (2d Cir. 2012). As in *Louis Vuitton*, GemShares' decision not to immediately file suit and move for a preliminary injunction and to instead attempt to negotiate a compromise does not disprove irreparable harm.

Second, Lipton contends that his breach of the non-compete clause has not caused GemShares to lose any potential investors or business partners. He points to text messages allegedly sent by an individual who was attempting to broker a deal between GemShares and the Singapore Diamond Investment Exchange. Those text messages, Lipton argues, show that GemShares' own reticence about Lipton's ongoing breach—not any concerns on the part of Singapore Diamond—was the reason the deal fell through. But even if the Court credited this evidence, it shows only that the failure of one particular deal was not directly attributable to Lipton's breach. It does not suffice to refute the more general contention that Lipton's competitive activities make it more difficult for GemShares to secure investors and partners for its business.

Third, Lipton argues that GemShares is not harmed by his competitive activities because it does not make (and has no plans to make) a commercial product like the

8

one marketed by Lipton through Secured Worldwide. He points to promotional materials produced by GemShares that make no mention of a commercial product. But the fact that GemShares did not publicize its intent to create a commercial product does not show that it does not intend to so. This evidence is insufficient to refute the sworn statements by Daniel Gramza and the deposition testimony of GemShares member Victor Feldman that developing financial and commercial products in tandem was central to GemShares' business plan from the beginning.

For these reasons, the Court concludes that GemShares has satisfied the requirements of irreparable harm and inadequacy of legal remedies. Although Lipton does not contest the remaining factors that apply to a motion for a permanent injunction, the Court finds that they are satisfied as well. GemShares has shown that the balance of hardships tips in its favor in light of the risk to its business development and Lipton's ability to find other employment as long as he does not compete directly with GemShares. And entering a permanent injunction in this case would serve the public's interest in enforcing covenants that "promote the formation and success of new businesses." *Owens*, 415 F.3d at 634. GemShares has thus met its burden to show that a permanent injunction is appropriate.

  **4. Applicability to Secured Worldwide**

Lipton argues that the Court may not enjoin Secured Worldwide because the company is not a party to GemShares' breach-of-contract claim. But Federal Rule of Civil Procedure 65(d)(2)(C) authorizes the Court to enjoin any "persons who are in active concert or participation with" the parties or the parties' officers, agents, servants, employees, and attorneys. It is undisputed that Lipton owns and operates Secured

Worldwide. The permanent injunction will therefore bar Secured Worldwide from breaching the non-compete clause to the same extent that it bars Lipton from doing so, and the fact that Secured Worldwide is not a party to the suit does not pose an obstacle to the requested injunction.

**B.     Assignment of rights in patent application**

In addition to the permanent injunction, GemShares requests that the Court assign it Lipton's rights in a patent application entitled "Secure Diamond Smart Cards and Exchange Systems Therefor." *See* U.S. Patent Application No. 14/619,633, Publication No. 2015/0223580 (published Aug. 13, 2015). GemShares relies on section 3.04(b)(1) of the operating agreement, which requires Lipton to assign to GemShares his "right, title and interest in and to any and all Creations . . . including, but not limited to, assignment as an inventor with respect to any patent or application for a patent." GemShares Operating Agreement, Ex. A to Chaban Decl., dkt. no. 84-2, § 3.04(b)(1). A remedy of specific performance of this provision is appropriate "only when damages constitute an inadequate remedy." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 637 (7th Cir. 2007).

Lipton points out that that the operating agreement requires him to assign his interest in his creations only during his "active involvement period," and he argues that the agreement is ambiguous in defining when that period begins. He cites section 3.04(b)(3), which indicates that the period lasts "during and within two years after the withdrawal from the Company." GemShares Operating Agreement, Ex. A to Chaban Decl., dkt. no. 84-2, § 3.04(b)(3). Lipton contends that this provision can be reasonably interpreted to mean that the active involvement period starts only upon withdrawal. But

this suggested interpretation defies common sense and the contractual language. Although the phrasing of section 3.04(b)(3) is not as transparent is it might have been, the term "active involvement period" clearly includes the period of Lipton's active membership. And the word "during" in the phrase "during and within two years" must be interpreted to refer to the period of membership because Lipton's contrary interpretation would make "during" redundant with the word "within." *See J.B. Esker & Sons, Inc. v. Cle-Pa's P'ship*, 325 Ill. App. 3d 276, 285, 757 N.E.2d 1271, 1279 (2001) ("Contract terms and clauses should not be disregarded as surplusage, as it is presumed that language is not employed idly.").

Lipton next argues that GemShares' requested relief is barred by laches. He contends that GemShares waited four years to file suit and refused to move for a preliminary injunction to allow Lipton to continue developing his commercial product, only to later reap the benefits of his investment. Lipton argues that this delay reflects a lack of diligence that prevents GemShares from seeking specific performance of the contract. *See In re Jamari R.*, 2017 IL App (1st) 160850, ¶ 60, 82 N.E.3d 109, 126 ("The existence of laches depends on whether, under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did." (internal quotation marks omitted)). But Lipton has not shown that GemShares was insufficiently diligent in asserting its rights. As the Court previously noted, GemShares sought to negotiate its dispute with Lipton over a period of years, and it contends that it filed suit only after those negotiations fully broke down. The Court concludes that the remedy of specific performance of Lipton's promise to assign his rights in his patent application is appropriate. For the reasons the Court

previously mentioned, there is no adequate remedy at law for Lipton's ongoing breach of contract. Because his application for the patent is part of the conduct that violates the non-compete provision, the damages associated with that conduct are difficult to calculate and specific performance is therefore warranted. *See TAS Distrib. Co.*, 491 F.3d at 637.

Finally, Lipton argues that if the Court decides to order him to assign his interests in the patent application to GemShares, it should also order GemShares to compensate him for the value of his investments that produced the patent. Lipton relies on the Illinois Supreme Court's decision in *Fitzpatrick v. Allied Contracting Co.*, 24 Ill. 2d 448, 182 N.E.2d 183 (1962), in which the court conditioned its award of specific performance on the plaintiff's payment of the value of improvements that the defendant had made.

But *Fitzpatrick* does not support the claim that such a condition is appropriate in this case. First, *Fitzpatrick* was based on common-law rules of equity relating to improvements of real property. Lipton points to no comparable equitable principles governing the intellectual property interests at issue in this case. Second, the court in *Fitzpatrick* explained that compensation for specific performance is appropriate "where improvements of a permanent character are made in good faith by one in possession, believing himself to be a bona fide purchaser . . . and under circumstances justifying such a belief . . . ." *Id.* at 456, 182 N.E.2d at 187. Here, Lipton signed an operating agreement that expressly required him to assign his interest in the patent application to GemShares. He had no reasonable basis to believe that he was free to invest his money in the development of a competing product and keep the resulting intellectual property. The Court therefore declines to impose the requested condition on its order of

specific performance.

**C.     Attorney's fees**

Finally, GemShares has moved for attorney's fees under section 14.04 of the operating agreement. Because the parties have not yet litigated GemShares' remaining claims, the Court will address this request at the conclusion of the litigation.

**Conclusion**

For the foregoing reasons, the Court grants the plaintiff's motion for a permanent injunction and for assignment of defendant Lipton's interest in the specified patent application [dkt. no. 193]. At tomorrow's status hearing, the Court will further discuss with counsel the preparation and submission of an appropriate form of the injunction and an order for the assignment of defendant Lipton's interest in the patent application.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 21, 2019