# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEMSHARES LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 17 C 6221 |
| ARTHUR JOSEPH LIPTON and SECURED WORLDWIDE, LLC., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court found in favor of plaintiff GemShares LLC as to liability on its claim for breach of contract against defendant Arthur Lipton. The claim involved GemShares' operating agreement, which barred its investors, including Lipton, from competing with the company. Lipton later formed Secured Worldwide LLC (SWW), which applied for a patent on a product that arguably was based on GemShares' intellectual property.

In a separate federal lawsuit involving SWW and another one of its investors, Cormac Kinney, a court concluded that Lipton had fraudulently represented that SWW had permission to use GemShares' intellectual property. In the present case, the Court concluded that under the doctrine of issue preclusion, the findings in the SWW-Kinney lawsuit precluded Lipton and SWW from disputing the allegation that Lipton had breached the non-compete agreement. *GemShares LLC v. Lipton*, No. 17 C 6221, 2019 WL 330470, at *5 (N.D. Ill. Jan. 25, 2019).

In a later ruling, the Court ruled that this entitled GemShares to summary

judgment on its breach of contract claim against Lipton. *GemShares LLC v. Lipton*, No. 17 C 6221, 2019 WL 587392, at *2 (N.D. Ill. Feb. 13, 2019). The Court thereafter denied Lipton's motion for reconsideration. Order of Mar. 18, 2019 (dkt. no. 206). More recently, the Court issued a permanent injunction barring Lipton and SWW from violating the non-compete agreement and also ordered the assignment to GemShares of Lipton's interest in a particular SWW patent application. *GemShares LLC v. Lipton*, No. 17 C 6221, 2019 WL 3287838, at *4-6 (N.D. Ill. July 2, 2019). In that ruling, the Court left open the question of GemShares' entitlement to attorney's fees under a fee-shifting provision in the operating agreement, because GemShares had asserted other claims that had not yet been adjudicated.

GemShares has now filed a motion seeking attorney's fees under the operating agreement and 35 U.S.C. § 285 as well as a further injunction directing the assignment to GemShares of any rights that GemShares may retain in the SWW patent application and any other intellectual property within the scope of the non-compete agreement. GemShares represents that once the Court enters a fee award and injunctive relief, it will dismiss its remaining claims, thus concluding the litigation before this Court except for efforts at collection. Pl.'s Mem. in Support of Pl.'s Mot. for Enforcement of Fee Shifting Provision (hereafter Pl.'s Opening Mem.). at 1.

GemShares has separately moved under Federal Rule of Civil Procedure 64 for an order permitting it to take collection-related discovery and freeze Lipton's assets in anticipation of a judgment.

The Court addresses both motions in this decision.

**Discussion**

**1.   Attorney's fees and expenses**

GemShares' fee request under the operating agreement is directed at Lipton, the other contracting party.[1]  Its fee request under section 285 is directed at SWW.  *See* Pl.'s Reply Mem. (dkt. no. 323) at 8.  GemShares asks to recover fees of $1,471,703.65 and expenses of $59,638.46, for a total of $1,531,342.11.  In support, it has provided the invoices it received from its attorneys and a summary that breaks down the requested fees by task.

The Court begins with the request for fees against SWW under 35 U.S.C. § 285.  Section 285 does not automatically award fees to the prevailing party (or to a prevailing patent holder) in a suit under the patent laws.  Rather, the statute permits a court to award reasonable attorney's fees to the prevailing party only "in exceptional cases."  An exception case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  "[T]here is no precise rule or formula for making these determinations"; a court considers the totality of the circumstances.  *Id*.

GemShares, however, makes no attempt to show in its motion how its case against SWW meets the statutory requirement of an "exceptional case."  It does not address the point at all.  Perhaps there is a viable argument in favor of GemShares'

---

[1] GemShares does not suggest, and certainly does not support any contention, that the operating agreement entitles it to recover fees against SWW.

implicit contention that the case is exceptional, but making that argument was GemShares' job, not the Court's job. GemShares has forfeited its request for fees under section 285 by failing to address the point.

By contrast, there is no question that GemShares is entitled to attorney's fees against Lipton in some amount under the GemShares operating agreement's fee-shifting provision. Section 14.04 of the operating agreement states as follows:

> **14.04 Prevailing Party's Attorneys' Fees and Costs.** Except as may be otherwise expressly provided herein and then only in such limited instances and circumstances as is so otherwise provided, any party who or which shall substantially prevail in any litigation brought to enforce any of the obligations of this agreement or otherwise brought in connection with any dispute regarding this agreement shall be entitled to the payment of reasonable attorneys' fees, court costs, and related legal expenses upon written demand served upon the non-prevailing party or parties. Such non-prevailing parties shall be jointly and severally liable for the payment of reasonable attorneys' fees, court costs, and related legal expenses as aforesaid.

Operating Agr. (dkt. no. 84-2) § 14.04.

GemShares has substantially prevailed against Lipton in this litigation. It obtained summary judgment against him on its claim for breach of the operating agreement and has already obtained significant relief, specifically an assignment of Lipton's interest in SWW's patent application. Lipton's response to GemShares' motion for fees largely consists of an attempt to relitigate the merits of the claim for breach of the non-compete agreement, as well as other claims not at issue on the motion for fees. These arguments are misplaced in the present context. The Court considered any arguments appropriately made by Lipton when it ruled on the question of issue preclusion, granted summary judgment in favor of GemShares on its claim for breach of the non-compete agreement, and denied Lipton's motion for reconsideration.

The real question is whether GemShares' fee request is "reasonable" within the meaning of section 14.04 of the operating agreement. At first blush, there is a good deal to suggest that the answer is no. The case appears to have been significantly overstaffed. Time was charged by twelve attorneys at Gibbons P.C., eight of them partners ("directors," as Gibbons calls them), as well as six billing non-attorneys at the firm; seven attorneys from "local counsel" Levin Ginsburg, four of whom are partners; and a partner at Vedder Price—in other words, twenty attorneys. And the time charged for certain tasks appears to be seriously out of whack. For example, nearly $71,000 was charged for the brief in opposition to defendants' motion to dismiss and the brief in opposition to defendants' motion for reconsideration of the ruling on the motion to dismiss. Assuming an average rate of $500 per hour, that's 140 hours, which in the Court's view is way more than was reasonably warranted on two briefs that only involved a subset of the claims SWW asserted. Similarly, nearly $181,000 was charged for preparing for, taking, and defending eight depositions, which means about $22,000 per deposition (44 hours if one assumes an average rate of $500), which again seems to be well beyond the high end of the reasonableness scale. In addition, a total of nearly $70,000 (140 hours at an assumed rate of $500 per hour) dealing with motions by four law firms to withdraw from representing defendants, which seems outlandishly high even though these were reasonably significant steps in the litigation.

But judicial review of "reasonable attorney's fees" required under a contractual indemnity arrangement like the one at issue here is not the same as review of a fee petition under a fee-shifting statute. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999). Specifically, "[u]nder the contract the initial

question is whether the outlay [of fees] is one 'resulting from' [defendant's] misrepresentation or breach of the agreement. If the answer is yes, then the next issue is whether the attorneys' fees were reasonable," in other words, "were they fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves." *Id.* And on the latter point, "[i]nstead of doing a detailed, hour-by-hour review after the fashion of a fee-shifting statute . . ., the district court should [should undertake] an overview of [plaintiff's] aggregate costs to ensure that they were reasonable in relation to the stakes of the case and [defendant's] litigation strategy . . . ." *Id.*

Judging from the invoices (in particular the documentation showing receipts and current amounts due), however, the requested fees and expenses all got paid. This "strongly implies that they meet market standards. The fees in dispute here are not pie-in-the-sky numbers that one litigant seeks to collect from a stranger but would never dream of paying itself. These are bills that [plaintiff] actually paid in the ordinary course of its business." *Id.* at 520. Given that highly significant circumstance—GemShares, a sophisticated commercial party, actually incurred and paid the fees in question even though it knew it might be stuck with the bill and unable to shift it—the Court concludes that the overall fee-and-expense request meets the operating agreement's reasonableness standard.

Lipton makes no significant argument that the requested fees do not meet the contractual standard. He makes five points. The second, that the case is not over and thus total fees cannot be determined, lacks merit. The question under the contract is whether GemShares substantially prevailed, and it has. Perhaps GemShares could

6

have waited until later to petition for fees, but by seeking a fee award earlier it disadvantages only itself, because it is effectively foregoing fees that might be awarded for work performed later. Lipton's third point is that he has not been able to present evidence that would show GemShares' claims lack merit and that it has perpetrated a fraud on the court. But Lipton had a fair opportunity to oppose GemShares' request for summary judgment, so the contention that he has been prevented from defending himself lacks merit. Lipton's fourth point also lacks merit; he says that if the case progresses he may prevail on some issues. But as the Court understands GemShares' representations, it will drop the rest of its claims once the Court rules on its current requests for relief. At that point the case will be over.

Lipton's other two points are at least colorable. He argues that any fees and expenses relating to claims that GemShares is dropping—mainly the patent infringement claim, one supposes—should be eliminated, because it did not prevail on those claims. And Lipton also argues that requests for fees for litigation other than the present lawsuit should be deducted.

The Court begins with the latter point (Lipton's objection 1). GemShares is asking to recover a little under $43,000 for fees associated with the *GemShares v. Lipton* case that was filed in federal court in New York in 2017, and a little under $166,000 for fees associated with SWW's bankruptcy. The fees related to SWW's bankruptcy are not recoverable under the operating agreement's fee-shifting provision. SWW was not a party to the contract, so it is not clear, at least not on the surface, how fees incurred in SWW's bankruptcy (largely, the Court assumes in an effort to get the automatic stay lifted so that GemShares could proceed against SWW) constitute fees

7

incurred in, as required, "litigation brought to enforce any of the obligations of [the operating] agreement or otherwise brought in connection with any dispute regarding this agreement." And GemShares has not addressed this question on its merits, either in its opening memorandum or even in its reply after Lipton made the argument. The Court concludes that GemShares has forfeited the point. The same is true of the fees incurred in the New York *GemShares v. Lipton* lawsuit. GemShares makes no effort to explain how these fees are recoverable and thus has forfeited the point. The Court reduces the fee request by $208,733.05 ($42,908.50 + $165,824.55) on account of these objections.
*See* Pl.'s Ex. E (dkt. no. 297-2).

Lipton's other remaining point (objection 5) concerns claims on which GemShares has not prevailed. As indicated, one assumes that this is directed at the patent infringement claim, which GemShares has represented to the Court it will drop. But this claim at least constitutes "litigation . . . otherwise brought in connection with any dispute regarding [the operating] agreement," even if it arguably might not entail "litigation brought to enforce . . . the obligations of [the] agreement." Specifically, the patent infringement claim involves the very product whose development by Lipton in connection with SWW constitutes the claimed breach of the non-compete agreement. Thus the patent infringement claim was brought "in connection with" the litigation over Lipton's claimed breach of the operating agreement. For this reason, the Court overrules Lipton's contention that fees related to the patent infringement claim should be deducted.

For these reasons, the Court awards GemShares a total of $1,322,609.06

8

against Lipton in attorney's fees and costs but overrules GemShares' request for a fee award against SWW.

**2.      Assignment of "creations"**

One aspect of GemShares' request for further injunctive relief is simple. It seeks a further order with respect to SWW. The Court has already entered a judgment against SWW (also known as American Diamond Mint, LLC) "assigning any rights [and] interests in U.S. Patent Application No. 14/619,333, including any interests assigned or owed to Secured Worldwide, LLC by its employees, officers, members, contractors, or agents, including Jay Plourde, to plaintiff Gemshares LLC." Am. Judg. (dkt. no. 335). At the request of the bankruptcy judge in the SWW case, GemShares now asks for an order stating that "to the extent SWW retains any rights and interests in" the patent application, those are assigned and transferred to GemShares. The Court believes it already did that, but because there is apparently some doubt, this request is granted.

GemShares' other request is trickier: it seeks an order assigning to it "any other of SWW's Creations (as defined by the Operating Agreement)" and enjoining the defendants "from using or disclosing in any way any such Creations." Pl.'s Opening Mem. at 18-19. The operating agreement defines "Creations" as follows:

> "Creations" means any invention, discovery, idea, concept, original work of authorship, design, process, development, improvement, or trade secret, including all Confidential Information and all Proprietary Information, as defined herein, whether or not patentable or registrable under patent, copyright or similar laws, which the Interest Holder may solely or jointly conceive or develop, or acquire free of restrictions, or reduce to practice during the period of active involvement, as defined below, (i) relating to "Gemstone Financial Products," as referenced in Section 3.01 hereof, or relating to any present or reasonably anticipated business and purpose of the Company, as set forth and defined in Section 3.01 (a) and (b) hereof, or (ii) created or otherwise developed at any time using equipment, supplies, facilities, information or

9

> proprietary rights, inventions or other property of the Company, including, but not limited to, any or all of the Confidential Information, Proprietary Information, Gemstone Financial Products, and the Patent Interest of the Company.

Operating Agr. § 3.04(a)(1). The terms "Confidential Information" and "Proprietary Information," used in the definition of "Creations," are defined as follows:

> "Confidential Information" and "Proprietary Information" means information (including information created by each Interest Holder) which is not generally known about the Company and, including without limitation, information about any and all other products, projects, developmental or experimental work, computer programs, data bases, knowhow, processes, formulas, customers, suppliers, business plans, marketing plans and strategies, finances, or personnel, and information of the Company or obtained from third parties under confidentiality agreements and, including, without limiting the generality of the foregoing confidential and proprietary information or matters within the scope of and as defined under: the provisions and protective covenants of Article 12, Confidential Information, hereof; Creations, as defined in Section 3.04(a)(1) hereof; and Gemstone Financial Products, as defined in Section 3.01(a) hereof. Confidential Information shall not include (i) information in the public domain or (ii) information made available to each Interest Holder or the Company from other sources which are not subject to an obligation of confidentiality.

*Id.* § 3.04(a)(2).

This covers a wide range of territory. The Court quite seriously doubts that an injunction that—as GemShares asks—quotes these provisions and directs the assignment to GemShares of anything covered by them would meet the particularity requirements for an injunction. Under the Federal Rules of Civil Procedure, an injunction must "state its terms specifically; and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)-(C). Under this rule, an injunction must "contain enough content to permit effective enforcement," *Auto Driveaway Franchise Sys., LLC*

*v. Auto Driveaway Richmond, LLC,* 928 F.3d 670, 677 (7th Cir. 2019), and this one wouldn't under the circumstances, given the combination of its generality and breadth. Presumably GemShares knows, or should know given its conduct of extensive discovery (for which its attorneys have billed nearly $350,000), what exactly SWW and Lipton have that should be conveyed pursuant to the operating agreement's terms. But GemShares has not described this at all in its briefing. The Court concludes that GemShares has failed to support a request for an injunction beyond what the Court has already ordered (as supplemented in this decision) and therefore overrules the request.

3. **Asset freeze and collection-related discovery**

GemShares expresses concern—citing allegations or findings of earlier asset transfers—that Lipton will dispose of or transfer assets to avoid collection of a judgment, and it asks the Court to freeze his assets. But a district court has "no authority to issue a preliminary injunction preventing [a party] from disposing of [its] assets pending adjudication of [the opposing party's] claim for money damages." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999). The Court overrules GemShares' request while noting that, as of the last court date in late November 2019, Lipton was the debtor in a pending federal bankruptcy case. Thus if he transfers assets without obtaining the bankruptcy court's approval, he faces criminal penalties under 18 U.S.C. § 152, in addition to whatever civil proceedings might arise from the transfer or disposition of assets in anticipation of a judgment.

The Court also notes that because GemShares has represented that it will dismiss its remaining claims against Lipton upon disposition of the present motions, it will at that point be able to obtain a final judgment against Lipton. This, in turn, will

11

permit GemShares to serve appropriate process on Lipton and others who might hold assets on his behalf to discover potentially leviable assets. Assuming GemShares follows state-law procedure in aid of collection and execution, *see* Fed. R. Civ. P. 69(a), Illinois procedure permits service of citations to discover assets upon a judgment debtor and others who may be holding assets in which the judgment debtor has an interest, *see* 735 ILCS 5/2-1402(a), and service of a citation operates as an injunction barring transfer of assets of the judgment debtor or in which he has an interest pending conclusion of the citation proceedings, *see id.* 2-1402(f)(1). In short, if GemShares acts promptly in getting to the Court the necessary language for a judgment, disposing of its remaining claims, and serving appropriate post-judgment process, it will effectively have its asset freeze in relatively short order.

Finally, GemShares seeks leave to serve asset-discovery-related document requests and interrogatories upon Lipton. The Court denies this request, without prejudice to GemShares obtaining discovery in aid of the judgment, following appropriate procedures, once a judgment is entered.

**Conclusion**

For the reasons stated above, plaintiff's motion for leave to file under seal [309] is granted; plaintiff's motion for relief under Federal Rule of Civil Procedure 64 [306] is denied without prejudice; and plaintiff's motion for enforcement of fee-shifting provision and obligation to assign creations [297] is granted in part and denied in part as stated in this order. By no later than 1/6/2020, plaintiff is to take appropriate steps to dismiss its remaining claims as it has represented and is to make a filing that includes appropriate language for entry of judgment against Lipton and for the allowed modification to the

injunction order.

Date: January 2, 2020

                                             _____
                                             MATTHEW F. KENNELLY
                                             United States District Judge